**Willard R. SANDERS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 75–1272.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1976.

Decided Aug. 24, 1976.

Rehearing and Rehearing En Banc Denied Aug. 24 and Sept. 23, 1976.

Timothy G. Pearson, Des Moines, Iowa, for appellant; Robert H. Laden, Des Moines, Iowa, on brief.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee; Paul A. Zoss, Des Moines, Iowa, on brief.

Before GIBSON, Chief Judge, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Willard R. Sanders, petitioner below, appeals from an order of the United States District Court for the Southern District of Iowa denying an application for post-conviction relief from a judgment in a narcotics case in which petitioner was the defendant. The application was filed pursuant to 28 U.S.C. § 2255, and the denial of the application followed an evidentiary hearing.

The original indictment against petitioner contained four counts involving two separate and distinct narcotics transactions. The first three counts charged violations taking place on February 10, 1971. The fourth count charged that on or about October 12, 1971 the petitioner unlawfully distributed a quantity of heroin in violation of 21 U.S.C. § 841(a)(1).

Petitioner, represented by two retained attorneys, was tried before a jury in November, 1971, and was found guilty on all four counts. The district court sentenced petitioner to imprisonment for ten years on each count with the sentences to be served concurrently but with the stipulation that the sentence on Count 4 was to be followed by a special parole term of three years, as provided by the statute.

Petitioner appealed from the judgment of conviction, and the conviction was affirmed. *United States v. Sanders,* 463 F.2d 1086 (8th Cir. 1972). In connection with his appeal petitioner was represented by counsel other than the attorneys who represented him at the trial.

In February, 1974 petitioner filed a pro se petition for post-conviction relief, and two other attorneys were appointed to represent him in connection with the petition. An evidentiary hearing was held in January, 1975, and the petition was denied. This appeal followed.

This court appointed still another attorney to represent petitioner in the prosecution of the appeal, and that attorney filed a brief and made an argument for petitioner. Petitioner also appeared before us and made an argument in his own behalf.

In his § 2255 application petitioner attacked his conviction on a number of grounds. Only one of those grounds merits consideration here, and that ground was not really brought into focus until appellate counsel was appointed to represent petitioner. That ground relates to the testimony of

an informer, Billy Joe Lincoln, who was a key witness for the government at petitioner's original trial.

It is undisputed that during a period of time extending from December 31, 1970 to August 17, 1971 Lincoln had acted as an informer for the Division of Narcotic & Drug Enforcement of the Iowa Department of Public Safety, and during that period of time he was paid sums of money in varying amounts with the total amount being $1145.00. Most of the payments were in sums of less than $50.00; there was one payment in the amount of $230.00, and another in the amount of $120.00.

About a week before petitioner was tried Lincoln had testified as a government witness in a related case involving another defendant. Lincoln was asked by government counsel on direct examination whether he had been paid anything for his services as an informer. Lincoln replied in the negative, but later questioning by government counsel developed that Lincoln had in fact received the payments above indicated, and that he expended the funds received for board and lodging. Lincoln apparently did not consider those subsistence payments as "payments" for his services as an informer, or at least he claimed that he did not so consider them.

Petitioner's case was tried before the same judge who had presided over the earlier trial just mentioned. When Lincoln took the stand, the United States Attorney asked him whether he had received any money from either the state or the federal

government. Counsel apparently expected Lincoln, in view of what had happened in the course of the earlier trial, to admit somewhat reluctantly that he had received payments but to go on and explain the nature of the payments. As in the earlier trial, Lincoln again denied at first that he had been paid anything. The United States Attorney undertook to bring out the truth by additional questions but was met by repeated defense objections which the trial judge sustained.[1]

Although he might have done so, the United States Attorney did not approach the bench for the purpose of straightening the matter out, nor did the trial judge take any action to that end. The record is silent as to why defense counsel objected to the questions put to Lincoln by the United States Attorney.

Petitioner now contends that Lincoln committed perjury when he denied that he had received payments for his services, that the perjury was known to government counsel, and that counsel knowingly permitted the perjury to stand uncorrected. On that basis petitioner argues that his conviction was tainted with a denial of due process of law. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States v. Librach,* 520 F.2d 550 (8th Cir. 1975).

The government argues that Lincoln's testimony was not related to the fourth count of the indictment and that the entire judgment should be upheld on the basis of

---

1. We deem it well at this point to quote from the trial transcript:

Q. (By Mr. Donielson, United States Attorney) And have you been employed—unemployed for some time?

A. (By Billy Joe Lincoln) I haven't been employed for quite some time.

Q. (By Mr. Donielson, United States Attorney) And how do you live?
MR. OLIVER: I object to that as incompetent, irrelevant and immaterial to any issues in this case.
THE COURT: Sustained.

Q. (By Mr. Donielson, United States Attorney) Mr. Lincoln, have you been paid any money as an informer by either the Government or the State?

A. (By Billy Joe Lincoln) No, I haven't.

Q. (By Mr. Donielson, United States Attorney) Have you been financed in any way?
MR. OLIVER: I object to that as repetitious. He said he hadn't been paid in any way, and that is purely repetitious.
THE COURT: Sustained.

Q. (By Mr. Donielson, United States Attorney) Mr. Lincoln, can you tell us who pays your rent?
MR. OLIVER: I object to that as incompetent, irrelevant and immaterial to any issues in this case.
THE COURT: Sustained.

the concurrent sentence rule. Alternatively, the government contends that it made a good faith effort to bring out the true facts about Lincoln's compensation but was frustrated in that effort by the objections of defense counsel and the rulings of the trial court thereon.

The United States Attorney says in that connection that he thinks it probable that he disclosed to defense counsel in advance of petitioner's trial the facts about Lincoln's compensation since it was and is the policy of his office to make such disclosures and to bring out on direct examination of an informer the fact that he has been compensated, if such is the case, rather than permit defense counsel to bring out the fact on cross-examination. However, in view of the lapse of time and absence of records, the United States Attorney cannot be sure that the disclosure was made in this particular case.[2]

The government contends further that in the course of the hearing conducted on the § 2255 application petitioner and his attorneys could have called petitioner's trial attorneys as witnesses,[3] and could have ascertained whether the fact of Lincoln's compensation had been disclosed to them prior to the trial and why they objected to the questions that the United States Attorney was propounding to Lincoln. The government says that this was not done, and that petitioner is foreclosed here by the adverse findings of the district court made after the conclusion of the hearing.

We have given the case careful consideration and have concluded that petitioner's conviction on the first three counts of the indictment should be reversed, and that the conviction on Count 4 should be affirmed.

## I.

■ The concurrent sentence rule invoked by the government is that where a defendant receives concurrent sentences on plural counts of an indictment, and where the conviction on one count is found to be good, a reviewing court need not pass upon the validity of the defendant's conviction on another count or on other counts if a ruling in his favor would not reduce the time that he is required to serve under the sentence imposed with respect to the valid conviction.

This court has applied the rule in many cases, including *United States v. Neff*, 525 F.2d 361 (8th Cir. 1975) and *Entrekin v. United States*, 508 F.2d 1328 (8th Cir. 1974). We refused to apply it in *United States v. Belt*, 516 F.2d 873 (8th Cir. 1975). The rule and its history are discussed fully in *Benton v. Maryland*, 395 U.S. 784, 787–93, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *see also* 2 Wright, Federal Practice & Procedure: Criminal, § 527 pp. 422–24.

■ In instances the rule serves as a convenient tool to be employed by a reviewing court. But, the question of whether it should be applied in a given case is one that addresses itself to judicial discretion, and it should not be applied in cases where its application would be substantially prejudicial to a defendant or expose him to a substantial risk of adverse collateral consequences that might flow from an invalid but unreversed conviction. *Benton v. Maryland, supra; United States v. Belt, supra; United States v. Febre*, 425 F.2d 107 (2d Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970). The view has been taken in this circuit that the rule should perhaps be limited in application to cases, like this one, involving collateral attacks on convictions, and that it should not be applied when this court is called upon to review a conviction on direct appeal. *See* Judge Lay's concurring opinion in *United States v. Neff, supra*, 525 F.2d at 364–65.

---

**2.** In argument the United States Attorney emphasized the fact that petitioner's trial counsel were both experienced and highly competent trial lawyers. He hypothesized that their objections were a matter of trial strategy and suggested that as of about 1971 the view was held, at least by some, that an informer's testi- mony that he had been paid for his services added to rather than detracted from his credibility. That suggestion lacks appeal.

**3.** One of petitioner's trial attorneys has died since the § 2255 hearing.

In determining whether to apply the rule in a given case, the court should consider whether it was likely that evidence relevant to counts on which the defendant was improperly convicted affected the finding of guilt on another count or on other counts, and whether the fact that the defendant was convicted on plural counts affected the length of his sentence or the thinking of the sentencing judge on the question of whether or not the defendant should be placed on probation. The court should also consider whether an unreversed invalid conviction might be used as a "prior conviction" should the defendant be charged later under a recidivist criminal statute, and whether the plural but concurrent sentences are adversely affecting or are likely to affect adversely such things as the place or conditions of the defendant's confinement.

In *Tarvestad v. United States*, 418 F.2d 1043, 1046 (8th Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970), a case decided soon after the decision of the Supreme Court in *Benton v. Maryland, supra*, we said that the concurrent sentence rule still has vitality where prejudice is not apparent, and the possibility of adverse collateral consequences appears to be remote. However, there would seem to be little question that in view of *Benton, supra*, more caution should be used in applying the rule today than was used prior to that decision. *See United States v. Febre, supra*, 425 F.2d at 113.

But, regardless of the current status of the rule in the context of either direct appeals or collateral attacks on convictions, we have determined that the rule should not be applied to this particular case, and it will not be applied.

## II.

Turning now to the problem presented by Lincoln's testimony, it is clear to us that what he said was literally false or at least misleading. It was material, and we cannot say that it was not prejudicial.

*United States v. Librach, supra*. The question is whether the failure of the trial process to bring the true facts to light deprived petitioner of due process of law.

Let it be said at the outset that the conclusion that we have reached in this case is not intended to be in any sense a reflection on the good faith or ethics of the United States Attorney as a lawyer and public official. We think that he may have been surprised at the initial answer given by Lincoln, and that he made an honest effort to bring out the true facts. When he was frustrated in that effort by successful objections made by attorneys whom he knew to be competent and experienced, he evidently concluded that he had no obligation to pursue the matter further.

While we can understand the attitude of government counsel and the course that he pursued, the fact remains that he knew that the testimony adversely affecting the credibility of the witness was not going to the jury and that the jury was being left with the impression that Lincoln was an uncompensated informer.

Even if government counsel believed, and he probably did believe, that he had disclosed the pertinent information to defense counsel and that they were objecting to his questions for reasons of their own, it would have been a simple matter to have called defense counsel to the bench and out of the hearing of the jury to have advised or reminded them and the trial judge of the true situation. Had that been done, and had defense counsel persisted in their objections, certainly the United States Attorney would have done all that could have been expected of him. But that was not done; and in the circumstances we think the failure of government counsel to act in a matter of such importance or potential importance fatally tainted the conviction.

That, of course, is not the end of the matter. It must be considered whether petitioner is precluded from raising the question here by the § 2255 finding of the trial court that petitioner had failed to discharge his burden of proving that the government

had obtained the conviction by a knowing use of perjured testimony.

The question is a difficult one because it appears that as of the date of the § 2255 hearing trial counsel were available and could have been called to the stand.[4]

The trouble lies in the fact that while the particular question that is before us relating to Lincoln's testimony was before the district court in a broad sense, it was obscured by and submerged in broad and rather fantastic claims of perjury and conspiracy that petitioner was advancing, and those were the claims that the district court found that petitioner had not established. The particular aspect of Lincoln's testimony that is giving us concern was simply not developed with specificity in the district court, and that court made no definite finding with respect to it. That was probably due in part to the fact that Sanders, who was present at the hearing, was playing the leading role in developing his case from a factual standpoint, just as he insisted on making an argument before us in connection with this appeal.

In many cases the somewhat confused situation which we have described might well prompt us to remand the case with directions to the district court to hold a further hearing and make specific findings in the area of concern.

Here, however, although we are not applying the concurrent sentence rule as such, the fact remains that the sentences were made to run concurrently and petitioner is now at liberty on parole. In such circumstances we do not think a remand for a further hearing to be followed by additional findings would be likely to serve any useful purpose.

Therefore, we have concluded that the judgment of the district court should be reversed as far as petitioner's conviction on Counts 1, 2 and 3 are concerned, and that

his conviction on those counts should be vacated.

### III.

We are satisfied that petitioner's conviction on Count 4 was valid.

The transaction described in Count 4 took place almost exactly ten months after the transaction described in the first three counts. There was no connection between the two transactions, and Lincoln was not involved in the October sale of heroin. The jury was told distinctly that it should consider the question of the guilt or innocence of the defendant on each count separately, and that a finding on one count was not controlling with respect to another count. There was ample evidence to sustain the conviction on Count 4, and it appears probable to us that had petitioner been tried on Count 4 standing alone, he would have been convicted. In sum, we do not think that the false testimony of Lincoln affected petitioner's conviction on the fourth count.

The length of the basic concurrent sentence imposed on Count 4 of the indictment may or may not have been affected by the fact that petitioner had been convicted on Counts 1, 2 and 3, as well as on Count 4. However, as has been seen, the sentences were concurrent, and the petitioner has been released from custody on parole. We are not persuaded that a resentencing of petitioner on Count 4 without regard to his conviction on the first three counts would benefit him substantially either from the standpoint of time served or possible time to be served.

Accordingly, we affirm the judgment of the district court as far as Count 4 is concerned.

Affirmed in part and reversed in part and remanded to the district court with directions to enter an order vacating petitioner's conviction on Counts 1, 2 and 3 of the indictment.

---

4. The United States Attorney has advised us that before the hearing he contacted one of petitioner's trial lawyers, Mr. Oliver, and ascertained that he would be available as a witness if called by petitioner, and the United States Attorney has stated that he was surprised when he learned that petitioner's new attorneys did not plan to call either of the trial attorneys.