UNITED STATES of America, Appellee,

v.

Frank HOLDER, Appellant.

No. 77–1224.

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1977.

Decided Aug. 23, 1977.

John R. Wylde, Jr., St. Paul, Minn., for appellant; and John Holahan, Jr., Minneapolis, Minn., on brief.

Ann D. Montgomery, Asst. U. S. Atty., Dist. of Minn., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Frank Holder was charged under a three-count indictment with intentionally distributing and with aiding and abetting the distribution of heroin. Count I charged Holder with the distribution of 2.64 grams of heroin on March 10, 1976. Count II charged Holder and Vernon Johnson with distributing 2.5 grams of heroin on November 17, 1976. Count III charged Doris Nunn and Holder with distributing 5 grams of heroin on the following day. The appellant was tried separately from his codefendants.

The evidence presented at trial established that on March 10, 1976, Agent Michael Campion of the Drug Enforcement Administration and Robert Adams, a government informant, arranged to purchase a quantity of heroin from Holder. They proceeded to Holder's residence at 315 Ravoux, St. Paul; Adams entered alone and received two aluminum cylinder-type packages of heroin from Holder. Adams then left the apartment and rejoined Agent Campion in the corridor.

Some eight months later on November 16, 1976, Adams phoned Vernon Johnson and asked him to arrange another purchase from the appellant. This conversation and another placed the following evening were recorded and played to the jury at trial.[1] On November 17, government agents observed Johnson exiting from Adams' vehicle at 923 21st Avenue South in Minneapolis and entering a building at that address. This building was one block from Holder's new residence at 911 22nd Avenue South. Photographs and diagrams were presented to show a frequently used pathway leading from the 21st Avenue building to Holder's apartment house. Johnson was later observed departing the 21st Avenue apartment building and returning to Adams' vehicle. Johnson handed Adams a quantity of heroin which was packaged identically to that purchased on March 10.

On the following day, Adams placed two phone calls to Doris Nunn to arrange a third heroin purchase from Holder.[2] Again, these conversations were recorded and played to the jury. Following the second call, Adams, Agent Campion and Nunn drove to Holder's residence. Agent Malcolm Long was positioned inside Holder's apartment building and observed Nunn en-

---

1. During each conversation, Adams told Johnson that he was interested in arranging a purchase, the price was negotiated and "Blind Red" or "Red" was mentioned as the supplier. Blind Red was Holder's nickname. Neither conversation was particularly probative of Holder's involvement.

2. Both conversations covered negotiations over the price of the heroin and arrangements for the pickup. "Blind Red" and "Red" were mentioned as the supplier. Again, neither conversation was particularly probative of Holder's involvement.

tering the appellant's apartment and departing shortly thereafter. She rejoined Adams and Agent Campion in their car and produced four foil packages of heroin similar to the ones obtained directly from Holder on March 10 and from Vernon Johnson the preceding day.

On these facts, the jury convicted Holder on Counts I and III and acquitted him on Count II. The court sentenced Holder to twelve years imprisonment on each count and ordered those terms to be served concurrently. In addition, the court directed a special parole term of three years on each count, also to be served concurrently.

On appeal, Holder argues that it was improper to admit hearsay statements of Doris Nunn into evidence because the government failed to establish by independent evidence that a conspiracy existed between Nunn and Holder. Had the court excluded Nunn's hearsay statements, Holder contends the remaining evidence was insufficient to support the verdict on Count III. In addition, he complains that his conviction on Count I must be reversed because the erroneously received evidence on Count III tainted the jury's verdict on Count I. We agree that Count III must be reversed but sustain Holder's conviction on Count I.

### I. Potential Impact of Inadmissible Hearsay on Count I.

■ The appellant argues the allegedly inadmissible hearsay evidence relating to Count III tainted his conviction under Count I. We find no merit in this argument. There was substantial direct evidence of Holder's involvement in the March 10 sale. Informant Adams testified that he purchased the contraband directly from Holder. Agent Campion's testimony corroborated much of Adams' statement. The hearsay evidence to which the appellant

objects relates to Holder's involvement in a transaction that took place eight months after the purchase charged in Count I. Each of the counts listed in the indictment were discrete transactions and we believe the jury considered the evidence on each separately. *See United States v. Febre*, 425 F.2d 107, 113 (2nd Cir. 1970), *cert. denied*, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1971). The jury was repeatedly cautioned to weigh the evidence on each count separately and obviously did so as their verdict of acquittal on Count II demonstrates. Thus, we have no difficulty sustaining Holder's conviction on Count I.

### II. The Concurrent Sentence Rule and the Admissibility of Certain Hearsay Testimony.

■ Before addressing the evidentiary issues raised by Count III, we must consider the government's argument that we invoke the concurrent sentence rule and not pass on the validity of Holder's hearsay claims.[3] Whether the rule should be applied in a particular situation is a matter of judicial discretion, *Sanders v. United States*, 541 F.2d 190, 193 (8th Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977), but, in our judgment, it ought not to be invoked where there is a likelihood that its application may expose a defendant to the risk of adverse consequences caused by an invalid but unreversed conviction. *See United States v. Lindsay*, 552 F.2d 263 (8th Cir. 1977); *United States v. Neff*, 525 F.2d 361 (8th Cir. 1975) (J. Lay, concurring); *United States v. Belt*, 516 F.2d 873 (8th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976). *See also Benton v. Maryland*, 395 U.S. 784, 787–793, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Tanner*, 471 F.2d 128, 140 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *United States v. Febre, supra* at 113.

---

**3.** The concurrent sentence rule provides that where a defendant receives concurrent sentences on plural counts of an indictment and where the conviction on one count is found to be good, a reviewing court need not pass upon the validity of the defendant's conviction on another count. *See Sanders v. United States*, 541 F.2d 190 (8th Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977); *United States v. Neff*, 525 F.2d 361 (8th Cir. 1975); *Entrekin v. United States*, 508 F.2d 1328 (8th Cir. 1974), *cert. denied*, 421 U.S. 977, 95 S.Ct. 1977, 44 L.Ed.2d 468 (1975); *Tarvestad v. United States*, 418 F.2d 1043 (8th Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970).

■ In this instance, we can identify at least one circumstance in which our failure to review an erroneous count will expose the defendant to potential adverse consequences. In assessing a prisoner's eligibility for parole, parole boards are instructed to consider a number of factors, including the prisoner's "offense severity rating" and his "salient factor score."[4] Both are determined pursuant to guidelines published by the United States Board of Parole.[5] To calculate a prisoner's offense severity rating, the Board has established severity ratings for various offenses and a recommended time range for parole which corresponds to a particular severity rating. Among the notes to the published guidelines, there appears the statement, "If an offense behavior involved multiple separate offenses, the severity level may be increased."[6] Thus, the guidelines and explanatory notes confirm the fact that our failure to review a particular count of a multi-offense conviction may well lead to a higher severity rating and, accordingly, reduced parole opportunities.

In addition, the salient factor score, which is also used in assessing a prisoner's eligibility for parole, establishes a point rating based in part on the offender's number of prior convictions.[7] Multiple offenses are considered as a single conviction, for rating purposes, where the various counts arise from a single offense behavior. For example, when a defendant is convicted of several heroin sales occurring within a limited time period, say two months, those offenses are treated as a single behavior and rated as a single conviction. When, on the other hand, related offenses were committed over a longer period of time, they may be treated as arising out of separate offense behaviors and rated as separate convictions under the salient factor formula. This is but another way in which our failure to review an erroneous count under the concurrent sentence rule may, in fact, prejudice a defendant's chances for early parole.

For many years, we have applied the concurrent sentence rule in the interest of judicial economy with the reservation that it not be followed where it might expose the defendant to substantial risk of adverse consequences. *Sanders v. United States, supra* at 193; *United States v. Belt, supra* at 875–876. Until recently, we have lacked evidence that applying the concurrent sentence rule would influence parole status decisions. It now appears that the United States Board of Parole's regulations for determining parole eligibility necessitate a reassessment of that doctrine.[8] Because we have identified the possibility of adverse consequences, we will consider the validity of Holder's evidentiary claim.

■ Turning then to Holder's hearsay-related argument, the general rule is that statements made by a coconspirator in furtherance of the unlawful association are not hearsay and are properly admissible against both the declarant and his coconspirators. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Scholle,* 553 F.2d 1109 (8th Cir. 1977); *United States v. Frol,* 518 F.2d 1134 (8th Cir. 1975); *United States v. Rich,* 518 F.2d 980 (8th Cir. 1975); *United States v. Buckhanon,* 505 F.2d 1079 (8th Cir. 1974); Fed.R.Evid. 801(d)(2)(E). In determining

---

4. The location or conditions of confinement are another circumstance in which application of the concurrent sentence rule might adversely affect a defendant. Apparently, at the federal level, there is no adverse effect. The Sentence Computation Manual published by the Bureau of Prisons explains that length of sentence is determined by the aggregate or total sentence served and that concurrent sentences do not, in any way, extend that determination.

5. 28 C.F.R. § 2.20 (1976) and accompanying offense severity guidelines and salient factor score.

6. *Id.,* notes accompanying adult offense severity guidelines.

7. *Id.*

8. During oral argument, counsel for the government admitted that application of the concurrent sentence rule in this case might prejudice the defendant under the Board of Parole's current regulations.

whether to admit hearsay evidence, the trial judge must be satisfied that there is substantial evidence, independent of the challenged hearsay statements, establishing the existence of a conspiracy between the declarant and the defendant. *United States v. Frol, supra* at 1136; *United States v. Rich, supra* at 984. "The offense of conspiracy consists of an agreement between conspirators to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy." *United States v. Hutchinson*, 488 F.2d 484, 490 (8th Cir. 1973), *cert. denied, sub nom. Ennis v. United States*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974), quoting from *United States v. Skillman*, 442 F.2d 542, 547 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). *See United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); *Kirschbaum v. United States*, 407 F.2d 562, 565 (8th Cir. 1969); *Cave v. United States*, 390 F.2d 58, 69 (8th Cir.), *cert. denied*, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968). The agreement need not be express or formal and may be established by circumstantial evidence. *Koolish v. United States*, 340 F.2d 513, 523–524 (8th Cir.), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).

■ Here, the independent evidence of agreement or cooperation was insufficient to raise a jury question on the issue of whether a conspiracy existed between Nunn and Holder. We think the aspects of the Nunn-Holder conspiracy, which the government's evidence failed to establish, are quite similar to the reasons relied on by the Court in *United States v. Frol, supra*, for reversing the conspiracy finding in that case. In *Frol*, a government agent, Block, arranged a purchase of heroin through an intermediary, Ellison. Shortly after midnight, the two drove to a bowling alley in North Minneapolis where Ellison left Block's vehicle and proceeded to a white car parked in the bowling alley parking lot. He returned to Block's vehicle shortly thereafter and produced 3.2 grams of heroin. Ellison was not searched before or after the alleged purchase. A team of nar-

cotic agents observed Frol's white automobile departing from his residence at approximately 1:10 A.M. They followed the vehicle to the same bowling alley where Block and Ellison had gone. Following a brief lapse in surveillance, a man matching Ellison's description was observed walking away from Frol's car. At approximately 2:00 A.M., the white automobile returned to Frol's residence. *United States v. Frol, supra* at 1135–1136.

The Court held the foregoing evidence insufficient to convict Frol of a conspiracy to distribute narcotics with Ellison. In reaching this conclusion, the Court stated:

> The jury could only speculate as to who might have been in Frol's car when it appeared at the bowling alley on the night in question. Moreover, even if the jury could properly infer from the evidence that Frol was in the car, the government has presented no direct or circumstantial evidence from which the jury could find beyond a reasonable doubt that Frol was in actual or constructive possession of the heroin or had passed it to Ellison. No transaction was observed, Ellison was not searched before or after the transaction[.]

*Id.* at 1137.

To establish the Nunn-Holder conspiracy, the government offered the following evidence: (1) Holder distributed heroin on at least one previous occasion (the March transaction), (2) the heroin purchased on November 18 was packaged identically to that purchased in March, (3) Nunn was observed entering Holder's apartment and exiting five minutes later and (4) Holder stated after his arrest that he lived alone in his apartment. In our judgment, this evidence suffers the same flaws observed in the *Frol* case. The jury could only speculate as to who was in Holder's apartment on the evening of November 18. Holder was not observed entering his apartment on that evening. Assuming, though, the jury concluded that Holder was in the apartment, there was no evidence that he was alone on that evening or that he actually

possessed and transferred the heroin to Nunn. No transaction was observed and Nunn was not searched before entering Holder's apartment. Thus, it was not shown that Nunn did not have the narcotics on her person before entering the apartment or that the transfer was not made by another individual in the apartment that evening. We conclude, therefore, that the conversations between Nunn and Adams were inadmissible against Holder and, upon Holder's objection, should have been stricken from the record.

■ Finally, we must discuss the sufficiency of the evidence to convict Holder on Count III in the absence of Nunn's reported statements. In reviewing a jury determination of guilt, an appellate court must view the evidence in the light most favorable to the government and must accept, as established, all reasonable inferences that tend to support the jury verdict. *United States v. Scholle, supra*; *United States v. Moss*, 544 F.2d 954 (8th Cir. 1976); *United States v. Harris*, 544 F.2d 947 (8th Cir. 1976); *United States v. Frol, supra* at 1137; *United States v. Rich, supra*; *United States v. Overshon*, 494 F.2d 894 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). Nonetheless, we believe the evidence on Count III was insufficient to sustain the jury's verdict. The evidence that Holder distributed heroin on November 18 was, in essence, the same as that used to establish a conspiracy between Holder and Nunn. In our judgment, this evidence is no more probative of a distribution or attempt to distribute than it is of a conspiracy to do the same. Without Nunn's reported statements, the jury could only speculate as to Holder's involvement in the November 18 sale. For this reason, we must reverse the jury verdict on Count III.

The judgment on Count I is affirmed; the judgment on Count III is reversed.

VAN OOSTERHOUT, Senior Circuit Judge, concurring in part and dissenting in part.

I am in complete agreement with the majority opinion with respect to the affirmance on Count I.

In the exercise of judicial discretion, I would determine the validity of the Count III conviction and bypass the application of the concurrent sentence rule in light of the incomplete record on this issue and the lack of adequate briefing.[1] The majority opinion fairly sets out the applicable law as to the Count III conviction and fairly sets out the facts. One additional fact should be added. Agent John Boulger, a seasoned Drug Enforcement Agent, testified that the cylindrical foil packages were a unique form of packaging heroin, which he had never seen except for the purchases made from the appellant on March 10 and November 17 and 18. Not only was the heroin packaged in an identical manner, but the Drug Enforcement Administration Chemist testified that all three exhibits of heroin were analyzed to contain the same adulterant, quinine, and the same dilutants, mannitol and lactose.

While the issue is close, I believe that the evidence when viewed in the light most favorable to the Government is sufficient to establish a conspiracy between Nunn and Holder, thus making Nunn's statements admissible, and that the evidence is sufficient to support the conviction on Count III.

I would affirm the convictions on Counts I and III and not reach the concurrent sentence rule.

---

1. The concurrent sentence rule is an extremely convenient rule and saves busy courts much judicial time in considering convictions on many count indictments, such as those frequently used in mail fraud cases. The majority opinion indicates a possibility but not a certainty that the Parole Board might, in some situations, defer parole consideration by reason of multiple counts upon which the trial court in the exercise of its discretion has imposed concurrent sentences. Such practice of the Parole Board, if it exists, is of doubtful validity.