UNITED STATES of America, Appellee,

v.

Michael J. MARTINEZ, Appellant.

UNITED STATES of America, Appellee,

v.

Richard G. RAMIREZ, Appellant.

Nos. 77–1623, 77–1668.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1977.

Decided April 3, 1978.

Charles C. Curry, Kansas City, Mo., argued, for appellant Martinez; Thomas J. Cox, Jr., Shaffer, Gibson & Cox, Kansas City, Mo., on brief.

Robert A. Simons, Kansas City, Mo., argued, for appellant Ramirez; Austin F. Shute, Kansas City, Mo., on brief.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Richard G. Ramirez and Michael J. Martinez appeal from their convictions on multiple counts of possession and distribution of phencyclidine (PCP),[1] a Schedule III con-

---

1. Phencyclidine, sometimes called "angel dust," is listed as a Schedule III controlled substance under 21 U.S.C. § 812(c) Schedule III(b)(7) (1970) and 21 C.F.R. § 1308.13(c) (1977). A recent publication describes PCP as follows:

> Phencyclidine, developed in the 1950's, is now licitly manufactured as a veterinary anesthetic under the trade name Sernylan. Since 1967 it has also been produced in clandestine laboratories, frequently in dangerously contaminated forms. The prevailing patterns of street-level abuse are by oral ingestion of tablets or capsules, containing the drug in powder form both alone and in combination with other drugs, and by smoking the drug after it has been sprinkled on parsley, marihuana, or some form of tobacco. * * * Reported experiences under the influence of phencyclidine are mainly nondescript or unpleasant. In low doses the experience usually proceeds in three successive stages: changes in body image, sometimes accompanied by feelings of depersonalization; perceptual distortions, infrequently evidenced as visual or auditory hallucinations; and feelings of apathy or estrangement. The experience often includes drowsiness, inabili-

trolled substance, in violation of 21 U.S.C. § 841(a)(1) (1970) and 18 U.S.C. § 2 (1976). We affirm the convictions.

## I. *Background.*

Undercover agents Jack Albrecht of the Kansas City, Missouri, police department and Barbara Barclay of the Drug Enforcement Administration (DEA) made contact with Ramirez on October 26, 1976, for the purpose of purchasing a quarter ounce of PCP from Ramirez. Ramirez contacted his source, later identified as Martinez, obtained a quarter ounce of PCP, and delivered the controlled substance to the undercover agents for $500. The delivery was made at Ramirez' residence at 2116 Amie Street in Kansas City. That transaction formed the basis for count I of the indictment against Ramirez and Martinez.

On November 2, 1976, the agents again went to Ramirez' residence and there purchased another quarter ounce of PCP at the same price. That transaction formed the basis for count II, solely against Ramirez.

On November 19, 1976, the undercover agents and Ramirez drove to the vicinity of the Martinez residence in Kansas City. Ramirez entered the house and returned with a half ounce of PCP. Ramirez then delivered the half ounce of PCP to the undercover agents for a price of $885. That transaction formed the basis for count III against Ramirez and Martinez.

Officer Albrecht then arranged with Ramirez to purchase six ounces of PCP on January 28, 1977. On that date, Albrecht went to the Ramirez home and was admitted by Ramirez. When Albrecht arrived, Martinez and two women were sitting in the living room. Ramirez gave Albrecht a sample of a white powdery substance for examination. Upon examining and testing the substance, Albrecht determined it to be

PCP. Ramirez then took Albrecht to a small enclosed porch adjoining the kitchen. From a stack of cardboard boxes, Ramirez extracted a bag of the powdery substance, which he told Albrecht was the six ounces of PCP. Albrecht then went outside to his car on the pretext of getting the money for the purchase. After notifying DEA officers stationed nearby that he had viewed the six ounces of PCP, he returned to the house. Once inside, Albrecht arrested Martinez and the two women; at the same time, a DEA agent arrested Ramirez on the front porch. Following the arrest, Albrecht went to the enclosed porch adjoining the kitchen and extracted the PCP from the same cardboard box in which the substance had been hidden earlier. These events form the basis for count IV against Ramirez and Martinez.

## II. *The Ramirez Appeal.*

A jury found Ramirez guilty of all four counts, and the trial judge, Hon. Elmo B. Hunter, sentenced Ramirez to serve a two-year penal sentence on count I, pursuant to 18 U.S.C. § 4205(b)(2) (1976),[2] to be followed by a two-year special parole term. Identical sentences were imposed on the other three counts to run concurrently with the sentence imposed in count I. Ramirez raises two issues on appeal.

### A. *Suppression of Statements.*

■ Ramirez contends that the district court erred in not ruling on his motion to suppress certain statements made to DEA agents after his arrest. The Government advised the court that it intended to use the statements only on cross-examination if Ramirez decided to testify. Ramirez' counsel indicated that Ramirez did not intend to take the stand. The court therefore made no ruling on the motion, but advised the

---

ty to verbalize, and feelings of emptiness or "nothingness." Reports of difficulty in thinking, poor concentration, and preoccupation with death are common. Many users have reacted to its use with an acute psychotic episode. * * * [Drug Enforcement Administration, U.S. Dep't of Justice, *Drugs of Abuse* 19 (3d ed.).]

**2.** Under 18 U.S.C. § 4205(b)(2), the court fixes the maximum sentence of imprisonment to be served, but the prisoner may be released on parole at such time as the Parole Commission may determine.

parties that the motion could "be handled during the trial, if necessary."

Ramirez maintains that because the court refused to rule on the motion, he feared that the statements would be used against him if he took the stand. He contends that the court's action therefore coerced him not to take the stand in his own defense.

We find no merit in this argument. The record discloses that Ramirez had decided prior to the suppression hearing that he would not take the stand and that Ramirez' counsel readily agreed to the court's treatment of the motion. We find no indication that the court's action coerced Ramirez in any way.

### B. *Search and Seizure.*

■ Ramirez also challenges the court's refusal to suppress the six ounces of PCP seized on January 28 and introduced as evidence on count IV. Because the sentence imposed on count IV will run concurrently with the sentences imposed for Ramirez' conviction on the other three counts, we apply the concurrent sentence rule and do not reach the search and seizure question. *See Sanders v. United States,* 541 F.2d 190 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977); *United States v. Neff,* 525 F.2d 361 (8th Cir. 1975); *Entrekin v. United States,* 508 F.2d 1328 (8th Cir. 1974), *cert. denied,* 421 U.S. 977, 95 S.Ct. 1977, 44 L.Ed.2d 468 (1975). In light of current Parole Commission procedures, *see United States v. Edwards,* 574 F.2d 937 (8th Cir., filed March 13, 1978), we think it highly unlikely that the additional conviction on count IV, when added to his other three convictions for distribution of Schedule III drugs, will cause Ramirez to sustain any adverse consequences.

### III. *The Martinez Appeal.*

The jury convicted Martinez on the three counts on which he was charged, and the court sentenced him to serve a four-year sentence on each count, pursuant to 18 U.S.C. § 4205(b)(2), to be followed by a two-year special parole term. The sentences are to run concurrently. He raises five issues on appeal.

### A. *Sufficiency of the Evidence.*

■ Martinez argues that there was insufficient evidence to implicate him in the crimes for which he was convicted. It is true that Martinez was not present on either October 26th or November 19th when Albrecht purchased the PCP from Ramirez; it is also true that Martinez took no apparent active part in the transaction on January 28th, although he was present. Nonetheless, the Government introduced sufficient evidence to implicate Martinez as a participant in each transaction for which he was convicted.

The testimony of Albrecht, Barclay, and other DEA agents on the surveillance team, along with several taped telephone conversations between Albrecht and Ramirez introduced as evidence, establish the following facts. On numerous occasions, Ramirez referred to his source as a person named "Mike." On October 26th and November 19th, Ramirez told Albrecht and Barclay that he was going to his source's home to buy the PCP. On those two dates, Ramirez went to a house owned by Martinez immediately prior to delivering the PCP to the two agents. On October 26th, Ramirez was seen talking to Martinez at the latter's home when he was there ostensibly to buy the PCP. On January 28th, Martinez was present at Ramirez' home when the six-ounce purchase was to have been made. This evidence is ample to support Martinez' convictions.

### B. *Severance.*

■ Martinez claims that the district court erred in overruling his motions for severance of trials. He argues that the evidence against him was merely circumstantial but "the great weight of the evidence against co-defendant Ramirez was carried over and transferred by association to defendant Martinez."

A motion to sever under Rule 14 of the Federal Rules of Criminal Procedure is ad-

dressed to the sound discretion of the trial court. *United States v. Anthony*, 565 F.2d 533, 538 (8th Cir. 1977); *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The test on review is whether the denial of the motion for severance resulted in clear prejudice. *United States v. Schroeder*, 433 F.2d 846 (8th Cir. 1970), *cert. denied*, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971); *United States v. Sanders*, 463 F.2d 1086, 1089 (8th Cir. 1972). Twice during the trial and twice during instructions the trial court reminded the jury that Martinez was not charged under count II of the indictment. The court adequately instructed the jurors to consider each defendant and each count separately. The evidence against the two defendants was sufficiently separable and the instructions sufficiently clear to permit the jurors to separately evaluate the evidence against each defendant. Finding no prejudice against Martinez, we conclude that the trial court did not err in overruling his motion for severance.

### C. *Admissibility of Ramirez' Out-of-Court Statements Against Martinez.*

Martinez argues that the court erred in allowing evidence of out-of-court statements by Ramirez to be introduced against Martinez. In particular, he challenges the introduction of recorded telephone conversations between Albrecht and Ramirez that took place between November 26, 1976, and January 28, 1977. In these conversations, Ramirez referred to his supplier as "Mike." These statements, together with other evidence, served to implicate Martinez in these transactions.

■ Martinez first contends that the Government failed to introduce sufficient independent evidence of his participation in the transaction to warrant the admission of Ramirez' extrajudicial statements as an exception to the hearsay rule. *See United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Scholle*, 553 F.2d 1109, 1117 (8th Cir. 1977). In support of his argument, Mar-

tinez relies on *United States v. Holder*, 560 F.2d 953, 956 (8th Cir. 1977), and *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975), two drug cases in which we found insufficient evidence of participation to justify use of the coconspirator exception to the hearsay rule. Although these cases are similar in many respects to the case before us, the Government here introduced substantially more evidence implicating Martinez and proved a greater degree of involvement in the crimes by Martinez than it did in *Holder* and *Frol*. Thus, we find sufficient independent evidence of Martinez' involvement in the drug sales to warrant the use of the coconspirator exception.

■ Martinez also contends that the introduction of the telephone conversations by Ramirez, who did not testify at trial, violated his sixth amendment right to confront witnesses against him. In responding to a similar argument under almost identical circumstances, we said in *United States v. Haynes*, 560 F.2d 913, 916 (8th Cir. 1977):

Haynes' contention that the admission of Allen's statements via Adams' testimony violated his constitutional rights to confront witnesses is also without merit. Absent unusual circumstances, which are not present here, "the accused's right of confrontation is not violated by the admission of hearsay statements as * * a declaration by a co-conspirator in furtherance of the conspiracy. * * *" *United States v. Carlson*, 547 F.2d 1346, 1356 (8th Cir. 1976) (footnote omitted). *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. Kelley, supra* [526 F.2d 615 (8th Cir.)] at 620–621. Under the circumstances presented here, the unavailability of the declarant, Allen, for a cross-examination did not deprive the jury of a satisfactory basis for evaluating the truth of the admitted statements. *Dutton v. Evans, supra*, 400 U.S. at 89, 91 S.Ct. 210; *United States v. Kelley, supra* at 620.

On the basis of the record presented to us, the *Haynes* rule applies, and we reject Martinez' argument that the conviction in this case violated his sixth amendment right to confront the witnesses against him.

### D. *Instructions.*

■ Martinez claims the court erred in failing to give two proposed instructions to the jury. Those instructions would have greatly limited the degree to which the jury could have considered Ramirez' acts and statements as evidence against Martinez. In denying the request to give these instructions, the trial court correctly noted that the instructions "would take away from the jury * * * the right to consider acts or statements of one defendant against another, which the jury should be able under the law * * * to consider."

The trial court otherwise instructed the jury fully on the law, and Martinez has not objected to these instructions. Accordingly, we reject Martinez' argument that he was prejudiced by the court's failure to give his requested instructions.

### E. *Search and Seizure.*

For reasons already enunciated in Ramirez' case, we do not reach the search and seizure issue relating to count IV of the indictment. Rather, we believe this case is an appropriate one for the application of the concurrent sentence rule.

### IV. *Conclusion.*

We affirm the convictions of both appellants. Because we have applied the concurrent sentence rule, we think it appropriate to suggest that the Parole Commission give no weight to the convictions on count IV in determining the appellants' eligibility for parole.

HENLEY, Circuit Judge, concurring.

I fully concur in the result reached by the court in these cases and am in full agreement with the views expressed by Judge Bright save to the extent that his opinion disposes of the claim of the defendants that the six ounces of PCP seized by Officer Albrecht on the premises of Ramirez on January 28, 1977 should have been suppressed as evidence on the basis of the concurrent sentence rule.

The status of that rule in this circuit at this time is doubtful at best. *Sanders v. United States,* 541 F.2d 190, 193–94 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). While the rule still has viability in certain circumstances, I prefer to decide the search and seizure question presented in this case on the merits.

It appears to me that when Ramirez exhibited the six ounces of PCP to Albrecht after Albrecht had tested the small sample given to him a few moments earlier, Albrecht would have been justified in arresting Ramirez immediately and seizing the drug as an incident to a lawful arrest or by reference to the plain view doctrine. I do not thing that the very short time that elapsed between Albrecht's view of the package and his reentry into the Ramirez home at which time he arrested Ramirez and seized the drug was of any constitutional importance. And I would reject the contention of the defendants on that basis rather than on the basis of the concurrent sentence rule.