UNITED STATES of America, Appellee,

v.

Ronald F. HOELSCHER, Appellant.

No. 84–5120.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1984.

Decided June 3, 1985.

Thomas J. Flynn, Minneapolis, Minn., for appellant.

Donald M. Lewis, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BRIGHT, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Ronald F. Hoelscher was indicted on March 7, 1984 by a federal grand jury on four counts of distributing or aiding and abetting the distribution of cocaine, one count of conspiracy to distribute cocaine, and one count of possession of cocaine.[1] On April 26, 1984, a jury returned a verdict of guilty on each of the six counts. Hoelscher appeals his convictions to this Court. He contends that the District Court[2] erred in not directing a verdict in his favor on Counts I and II, that the failure of the District Court to direct a verdict in his favor on Counts I and II tainted his convictions on the remaining counts, and that the prosecution failed adequately to identify him at trial as the actual perpetrator of the crimes charged in the indictment. We affirm Hoelscher's convictions.

## I.

On October 13, 1983, William Andre and Drug Agent Michele Leonhart met in Leonhart's automobile pursuant to a number of earlier conversations in which they had discussed Leonhart's desire to purchase cocaine. Andre left the car to call on his source. He entered 413 Cedar Avenue, a three-story building containing a number of businesses and 16 apartments, and returned about ten minutes later telling Leonhart his source was not at home. Thirty minutes later, Andre again entered 413 Cedar, but again told Leonhart his source was not at home. After another ten minutes had gone by, Andre again entered 413 Cedar. This time, Andre returned and told Leonhart that his source was there and that Andre had an ounce of cocaine. Leonhart gave Andre $2300 for the cocaine. Andre was seen reentering 413 Cedar about ten minutes after the sale and leaving 413 Cedar a few minutes later. About a minute after Andre's departure, Hoelscher also was seen leaving 413 Cedar.

Leonhart and Andre had several conversations following their October 13 transaction. During a telephone conversation on December 22, 1983, Leonhart asked Andre to tell his source to put aside some cocaine for her. Andre hung up the telephone; a pen register connected to Andre's telephone line establishes that Andre then immediately called Hoelscher's number. Minutes later, Andre called Leonhart and told her that his source had put aside two ounces. However, no transaction was consummated at that time.

1. The indictment charged Hoelscher with the following:

> Count I: Conspiracy with William Albert Andre to distribute cocaine from October 6, 1983 to February 8, 1984.
> Count II: Distribution or aiding and abetting the distribution of one ounce of cocaine on October 13, 1983.
> Count III: Distribution or aiding and abetting the distribution of one ounce of cocaine on February 7, 1984.
> Count IV: Distribution or aiding and abetting the distribution of one ounce of cocaine on February 8, 1984.
> Count V: Distribution or aiding and abetting the distribution of two ounces of cocaine on February 8, 1984.
> Count VI: Possession of approximately 10 grams of cocaine on February 8, 1984 with intent to distribute.

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

On February 3, 1984, Leonhart called Andre and told him she still was interested in buying cocaine. On February 6, Andre called Leonhart and told her that half-ounce quantities were available, but that he would call his source and make sure. The pen register establishes that Andre then called Hoelscher's number. Andre later called Leonhart back and told her that cocaine was available for $2250 an ounce. The two agreed to conduct a purchase the next day.

On February 7, Leonhart called Andre to set the time of the transaction for 3:00 p.m. After hanging up, Andre called Hoelscher's number. When Leonhart called Andre back 20 minutes later, Andre told her that he and his source would have to do the deal by 3:00.

Andre was seen entering and leaving 413 Cedar Avenue, Apartment 4 (Hoelscher's apartment) just before 3:00 p.m. on February 7. He met Leonhart and obtained $2250 in currency (the serial numbers of which had been recorded) from her. Andre then returned to 413 Cedar, Apartment 4. Shortly thereafter, Andre left the apartment, and gave Leonhart an ounce of cocaine. Andre also informed Leonhart that his source had four additional ounces of cocaine available.

Leonhart called Andre that evening to inquire about the four additional ounces of cocaine. Andre told her he would contact his source; he hung up and dialed Hoelscher's number. Andre telephoned Leonhart some minutes later and told her that she could purchase three of the four ounces the next day.

The next morning, Leonhart called Andre and arranged to meet him at 12:30. Immediately thereafter, Andre called Hoelscher's telephone number. Before Andre's meeting with Leonhart, Andre was again seen entering 413 Cedar, Apartment 4. Shortly thereafter, Andre met Leonhart and exchanged one ounce of cocaine for $2150 of currency, the serial numbers of which had been recorded.[3] Andre then left Leonhart

to pick up the remaining two ounces of cocaine. He again entered 413 Cedar, Apartment 4 (after knocking on the door and shouting, "Open up, it's me."), and left the apartment approximately 12 minutes later. He told Leonhart he had obtained two more ounces of cocaine, gave her the cocaine, and told her he and his source were interested in doing further business. At that point he was arrested.

In the meantime, other agents had obtained a warrant to search 413 Cedar, Apartment 4. No one other than Andre had been observed entering the apartment. When agents knocked on the door, Hoelscher answered. The apartment consisted of one room, and in it the following items were discovered:

1) 8.43 grams of cocaine on top of a dresser in the closet;

2) 2.05 grams of cocaine elsewhere in the closet;

3) A Deering sifter containing traces of cocaine, found on a table;

4) A second Deering sifter containing traces of cocaine found in the closet;

5) An O'Haus gram scale, discovered in the closet, containing cocaine residue;

6) 188.72 grams of marijuana, found in the closet;

7) 59.41 grams of marijuana, found in the closet;

8) 2.42 grams of marijuana, found in the closet;

9) A bottle of insoitol, a "cut" for cocaine, found in the closet dresser drawer with cocaine;

10) $2,150 in currency, identified as being cash supplied by Agent Leonhart on February 8, found in the top dresser drawer in the closet;

11) $2,000 in currency, identified as being cash supplied by Agent Leonhart on February 7, found in the same location.

Hoelscher was thereupon arrested.

## II.

Hoelscher contends that there is insufficient evidence to support his convictions on

---

**3.** We have not been informed of the reason for the apparent $100 reduction in the price of an ounce of cocaine between the February 7 and the February 8 sales.

Count I (conspiracy to distribute cocaine) and on Count II (aiding and abetting the distribution of cocaine on October 13, 1983). In reviewing Hoelscher's convictions, the Government is to be accorded all reasonable inferences which might be derived from the evidence. " '[I]t is not necessary that the evidence exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.' " *United States v. Carlson,* 547 F.2d 1346, 1360 (8th Cir.1976) (citation omitted), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

■■■ " 'The offense of conspiracy consists of an agreement between [two or more persons] to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy.' ... The agreement need not be express or formal and may be established by circumstantial evidence." *United States v. Holder,* 560 F.2d 953, 957 (8th Cir.1977) (citations omitted). The evidence in the present case shows that Andre, prior to selling cocaine to Leonhart as charged in Counts III, IV, and V, entered Hoelscher's apartment and returned to consummate each sale shortly thereafter. As to the distribution charged in Count II, the evidence shows that Andre entered Hoelscher's apartment building, though surveillance could not account for his whereabouts after he entered the building before returning to sell Leonhart cocaine. The evidence also indicates that Hoelscher was the only other person in the apartment during the transactions charged in Counts IV and V. A pen register attached to Andre's phone revealed that he dialed Hoelscher's phone number several times in response to Leonhart's requests for specific information from Andre's source, and

thereafter returned Leonhart's calls to give her the information she had requested. A search of Hoelscher's apartment revealed cocaine, a scale containing cocaine residue, insoitol (a cut for cocaine), and over $4000 in bills supplied by Leonhart to Andre for her cocaine purchases from him. While this evidence may be consistent with Hoelscher's contention that he was simply letting Andre use his apartment to store cocaine, we are satisfied that the evidence tending to show a conspiracy is substantial and is sufficient as a matter of law to support the jury's verdict that Hoelscher was guilty of participating in a conspiracy to distribute cocaine. Thus, we conclude that the District Court did not err in declining to direct a verdict for Hoelscher on Count I.

Hoelscher's second claim is that the District Court erred in failing to direct a verdict in his favor on Count II because there was insufficient evidence as a matter of law for a jury to find him guilty on that Count. Hoelscher argues that the jury found him guilty on Count II only because it considered evidence relating to Counts III, IV, and V against him on Count II; he contends that this violates the principle that a jury must consider the evidence on each count separately.

■■■ While we note that Hoelscher is correct insofar as he contends that a jury must consider every count of an indictment separately, it does not follow that a jury may not, when considering a given count, take evidence relating to other charged offenses into account when that evidence also is relevant to the count under consideration.[4] "Evidence otherwise relevant does not become irrelevant because it incidentally tends to establish another offense." *Ev-*

---

4. In *United States v. Buckhanon,* 505 F.2d 1079 (8th Cir.1974), this Court noted that "evidence of past criminal conduct is properly admitted '[t]o prove the existence of a larger continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. [Such evidence] will be relevant as showing ... the identity of the actor ... where [it] is in dispute.' " *Id.* at 1083 (emphasis deleted) (quoting C. McCormick, Law of

Evidence § 190, at 448–49 (2d ed. 1972)); *see also* Fed.R.Evid. 404(b). Clearly, if evidence relating to a crime not charged in an indictment may be introduced to prove identity for the count under consideration, evidence relating to other counts charged in the indictment may certainly be considered by a jury for the purpose of determining identity on the count in question.

*enson v. United States*, 316 F.2d 94, 96 (8th Cir.1963).

In the present case, in order to make out a submissible case against Hoelscher on Count II, the government essentially needed to show: 1) Andre's statements that to obtain cocaine for Leonhart, he had to get it from his "source",[5] 2) Andre's trips to 413 Cedar to get the cocaine, 3) Andre's sale of the cocaine to Leonhart, and 4) the fact that Andre's "source" in 413 Cedar was Hoelscher. The only evidence that tended to show that Andre's "source" at 413 Cedar was Hoelscher was, as Hoelscher points out, the evidence used against Hoelscher on Counts III, IV, and V: that Andre consistently obtained cocaine for Leonhart from Hoelscher whenever he visited 413 Cedar. Because this evidence tends to show that the "source" from whom Andre obtained cocaine in 413 Cedar on October 13, 1983 was Hoelscher, we believe that evidence relating to Counts III, IV, and V properly could be considered by the jury in connection with Count II. Thus, we hold that the District Court did not err in declining to direct a verdict for Hoelscher on Count II.

Hoelscher relies on two decisions of this Court, which he contends require us to reverse his conviction on Count II: *United States v. Holder*, 560 F.2d 953 (8th Cir. 1977), and *United States v. Frol*, 518 F.2d 1134 (8th Cir.1975). In *Holder*, the defendant had originally been convicted of distributing heroin on the basis of 1) statements by a co-conspirator that she would purchase heroin from the defendant, 2) entry by the co-conspirator into the defendant's apartment, 3) the subsequent sale of heroin to a government agent, and 4) prior drug sales by the defendant. However, because the government had provided insufficient evidence of the existence of a conspiracy involving the defendant, our Court held that the statements of the co-conspirator erroneously had been admitted against the defendant. The Court concluded that the remaining evidence—the sale of heroin to a government agent by the co-conspirator following entry by the co-conspirator into the defendant's apartment, and the defendant's conviction for distribution of heroin eight months earlier—was insufficient evidence on which to ground a conviction.

The key distinction between *Holder* and the present case is that in *Holder*, once the statements of the co-conspirator were held to be inadmissible, there remained an insufficient evidentiary basis for concluding that the defendant was implicated in the sale. In the present case, there is ample evidence of defendant's participation in the conspiracy, the statements of the co-conspirator are therefore admissible, and thus the jury clearly had a sound evidentiary basis for concluding that Andre procured the cocaine from a source in 413 Cedar. And as we have held earlier in this opinion, the evidence of the trips by Andre to Hoelscher's apartment in 413 Cedar on February 7 and 8 to obtain cocaine could properly have been considered by the jury in determining the identity of Andre's "source" with respect to the offense charged in Count II.

For the same reasons, we do not believe *United States v. Frol*, 518 F.2d 1134, supports Hoelscher's position. In that case, evidence that before selling heroin to a government agent the seller had stopped briefly by the defendant's automobile was held insufficient to convict the defendant of possession of heroin with intent to distribute. The Court in *Frol* noted that even if certain other evidence indicating that the defendant was somehow connected to the sale had been admissible, the evidence was still insufficient to show that defendant had actually or constructively *possessed* the heroin on the night in question. In the present case, to convict Hoelscher on Count II the government needed only to show that Hoelscher aided and abetted Andre's distribution of cocaine on October 13, 1983. As previously stated,

---

**5.** Though Andre did not testify at trial, his statements to Leonhart were properly admitted by the District Court under the co-conspirator exception to the hearsay rule. *See United States v. Lewis,* 759 F.2d 1316, 1338 (8th Cir.1985); *see also* Fed.R.Evid. 801(d)(2)(E).

we hold that the District Court did not err in declining to direct a verdict for Hoelscher on Count II, and we affirm Hoelscher's conviction on that count.

Hoelscher's final contention is that he was not identified sufficiently at trial for the jury to have concluded beyond a reasonable doubt that he was the person accused in the indictment. This contention is meritless. "Courtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who [committed the acts charged]." *United States v. Fern,* 696 F.2d 1269, 1276 (11th Cir.1983); *see also Delegal v. United States,* 329 F.2d 494 (5th Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964). The evidence adduced at trial, including references to "Hoelscher" and "the defendant," as well as a photograph and a videotape of Hoelscher, was sufficient for that purpose.

Because we affirm Hoelscher's convictions on Counts I and II, we need not consider his claim that he was prejudiced on Counts III, IV, V, and VI by the District Court's denial of his motion for a directed verdict on Counts I and II. Hoelscher's convictions on all six counts of the indictment are affirmed.