UNITED STATES of America, Appellee,

v.

Harold Lloyd KOCHER, Appellant.

No. 90–2195.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1991.

Decided Nov. 6, 1991.

Gerald Coleman, West Memphis, Ark., for appellant.

Lesa Bridges Jackson, Little Rock, Ark., argued (Charles A. Banks, Little Rock, Ark., on the brief), for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Harold L. Kocher, Jr. appeals his conviction and sentence for conspiring to possess with intent to distribute and manufacture amphetamine in violation of 21 U.S.C. § 846. We affirm.

## I.

Kocher raised catfish in Weiner, Arkansas. Darrell Craft, also a fish farmer, introduced Kocher to Lloyd White and Gary Smith. White periodically hauled catfish for Kocher.

White and Smith had been involved in an amphetamine manufacturing operation in Weiner at a residence owned by Phillip and Darrell Craft. Fearing that the clandestine amphetamine laboratory would be discovered, White arranged to move it to a barn that he rented from Kocher.

Kocher, along with White, Smith, Darrell Craft, and an elderly man who lived in a portion of the barn, moved the dismantled lab into Kocher's barn. Testimony at trial indicated that although all of the equipment was sealed in boxes, the smell of the chemicals used for manufacturing amphetamine was still noticeable. White assembled and operated the laboratory in the loft of Kocher's barn. The electricity and water used in the laboratory were provided by Kocher.

During this period, Smith left Arkansas with the intention of manufacturing amphetamine in the state of Virginia. Unsuccessful in his attempt to manufacture amphetamine on his own, Smith contacted White and asked if he could resume manufacturing amphetamine with him. In response, White advised Smith that Kocher was now helping him. While Smith was away, White gave Craft some lengths of PVC pipe containing amphetamine. Craft then gave the amphetamine to Kocher, who stored it under a doghouse at his neighbor's home. Smith returned to Arkansas and requested his amphetamine from Craft, who took Smith to Kocher's house. Smith and Kocher then drove in Kocher's truck to the place where the amphetamine had been stored, where Kocher then retrieved it for Smith.

Kocher was present when White was arrested for conspiracy. Thereafter, law enforcement officers executed a search warrant on Kocher's property, which consisted of a house in which Kocher resided, a barn located approximately forty yards from the house, and several fish ponds. The officers discovered the amphetamine laboratory in the barn. They found that additional rooms had been constructed in the barn, that an air conditioner had been installed, that PVC pipe had been installed to drain wastes from the amphetamine manufacturing process, that the walls had been covered with aluminum, and that the laboratory equipment had been covered with plastic. Testimony at trial indicated that such alterations help hide the pungent odor of the chemicals used during the amphetamine cooking process.

The officers also detected the distinctive odor of phenylacetic acid, an ingredient used to produce amphetamine, on Kocher's phone and in his closet. They found a surveillance camera, which was focused on the driveway leading to the barn, concealed in the chimney of Kocher's house and discovered the viewing monitor in Kocher's closet.

## II.

Kocher first argues that the district

court [1] erred by allowing into evidence the statement made by White to Smith to the effect that Smith's services as an amphetamine cook were no longer needed because Kocher was helping White.

 A statement is not hearsay if made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). To satisfy the requirements of this exception to the hearsay rule, "the government must demonstrate that (1) a conspiracy existed; (2) that the defendant and declarant were part of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Eisenberg,* 807 F.2d 1446, 1453 (8th Cir.1986). These elements must be proved by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987); *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978). A district court's determination that these requirements have been established is reviewed under the clearly erroneous standard of review. *Bourjaily,* 483 U.S. at 181, 107 S.Ct. at 2781; *Eisenberg,* 807 F.2d at 1453.

 Kocher argues that there was no evidence of a conspiracy. We do not agree. Testimony at trial demonstrated that a conspiracy initially existed between White, Smith, Darrell Craft, and others. Craft introduced Kocher to White and Smith. White leased Kocher's barn, and Kocher helped move the laboratory equipment into the barn. Kocher paid the utility bills on the barn and maintained a concealed surveillance camera in the chimney of his residence and a monitor in his bedroom closet. Craft gave a PVC pipe containing amphetamine to Kocher, who stored the controlled substance and retrieved it at Smith's request. Thus, the district court could readily find by a preponderance of the evidence that a conspiracy existed involving Kocher, White, and Smith.

Kocher next argues that the statement was not made during the course of the conspiracy. Testimony at trial, however, revealed that Smith, White, Darrell Craft, Kocher and others moved the amphetamine lab into Kocher's barn sometime during August 1988. It was only two to four weeks later that Smith contacted White about returning to Arkansas and was told that Kocher was now helping White. We thus agree with the district court that the statement was more likely than not made during the course of the conspiracy.

Finally, Kocher argues that the statement was not made in furtherance of the conspiracy. We cannot agree. The "in furtherance" language is to be broadly construed. *United States v. Bentley,* 706 F.2d 1498 (8th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397 (1984). "Statements by a coconspirator identifying a fellow conspirator are considered to be in furtherance of the conspiracy." *United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982). Moreover, statements which reveal the existence and progress of a conspiracy are also in furtherance of the conspiracy. *Id.; United States v. Garcia,* 893 F.2d 188, 190 (8th Cir.1990). White's statement to Smith identified Kocher as a coconspirator and revealed the existence and progress of the conspiracy.

 Next, Kocher argues that the district court improperly instructed the jury with regard to testimony regarding Kocher's prior use of cocaine.

During the government's direct examination of Smith the following exchange took place:

Q. So did you ever spend any time with the defendant other than just your initial introduction?

A. We might have—well, we did, we tooted coke one time out back of his daddy's fish house.

Q. Excuse me, would you please explain to the jury what you mean?

A. We tooted some cocaine.

Q. What does tooted mean?

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

A. We used a straw and we put it up our nose.

Q. Okay. You sniffed the cocaine?

A. Uh-huh.

Kocher's counsel did not move to strike this testimony and during cross examination of Smith established that the cocaine in question belonged to Smith and had been offered by him to Kocher as a social gesture.

Instruction No. 16, given along with the district court's other instructions, informed the jury that:

Although there is evidence that the accused may have used cocaine at some time, that is not evidence or proof whatever that, at a later time, the accused committed the offense charged in the indictment. Evidence as to the alleged earlier cocaine use may not therefore be considered by the jury, in determining whether the accused did the act charged in the indictment. Nor may such evidence be considered for any other purpose whatever, unless the jury first find that other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the act charged in the indictment.

If the jury should find beyond a reasonable doubt from the evidence in the case that the accused did the act charged in the indictment, then the jury may consider evidence as to the alleged earlier cocaine use in determining the state of mind or intent with which the accused did the act charged in the indictment. And where the proof of the alleged earlier cocaine use is established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the indictment, the accused acted willfully and with specific intent, and not because of mistake or accident or other innocent reason.

The government urged the district court to give Instruction No. 16, arguing that the testimony regarding the cocaine use was admissible under Federal Rule of Evidence 404(b) and that without the instruction the government would be unable to comment on the testimony. The government did not proffer the challenged testimony as Rule 404(b) evidence (and indeed, from the excerpt set forth above, it appears that Smith's nonresponsive answer to the question probably caught the prosecutor by surprise) and thus did not specify for the district court as it should have, *see United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir.1988), the particular issue or issues on which the testimony was relevant at the time the testimony was given. Nonetheless, once the testimony was before the jury and no motion to strike was made, the district court was faced with the task of determining how best to deal with it.

As we view it, Instruction No. 16 was a combination of a Rule 404(b) instruction and a permissive inference or presumption instruction. A permissive presumption allows the jury to draw an inference from certain facts, but does not require the jury to draw that conclusion. *See County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Permissive presumptions are constitutional so long as the inference to be drawn is not irrational. *Francis v. Franklin*, 471 U.S. 307, 314–15, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). In other words, the inference drawn must be one that reason and common sense justify in light of the evidence before the jury. *Id.*

The jury was presented with substantial evidence regarding Kocher's involvement in the amphetamine manufacturing conspiracy. The jury also heard Smith testify about his (Smith's) deep involvement in the manufacture of amphetamines. The testimony regarding their mutual use of cocaine tended to establish that Kocher and Smith had a relationship that involved controlled substances. Their joint use of cocaine also tended to establish that Kocher was aware that Smith, a coconspirator, was in possession of a controlled substance. In the light of this evidence, it was not irrational for the jury to infer that one who used drugs had knowledge of the drug environment. At a minimum, these inferences tended to negate Kocher's naivete

argument: that he lacked knowledge of the activities occurring in his barn involving Smith, a person who Kocher knew used and possessed controlled substances. Thus, the permissive inference allowed by the instruction, in the context of the other evidence before the jury, was not irrational.

In our view, Instruction No. 16 was a limiting one. The district court, after careful deliberation, concluded that it was constrained to instruct the jury to prevent the improper use of the testimony regarding Kocher's earlier cocaine use. The instruction cautioned the jury not to use the cocaine evidence as proof that Kocher "committed the offense charged in the indictment." The instruction limited the jury's use of the cocaine evidence to determining Kocher's mental state. Other instructions submitted to the jury set forth all of the elements of the crime of conspiracy, including the requisite mental state, and the proof required to satisfy each element. Instruction No. 11, for example, required that the jury find that Kocher possessed the requisite mental state, based on all of the evidence. Furthermore, Instruction No. 12 unequivocally required the jury to find beyond a reasonable doubt, based on all the evidence, that the conspiracy was willfully formed, and that Kocher willfully became a member of it.

Although we do not suggest that Instruction No. 16 is a model that should be followed in other cases, we hold that the district court did not err in giving it in the circumstances of this case.[2] The record reveals that the district court was deeply troubled that in the absence of this clarifying, limiting instruction, the jury might seize upon the "tooting cocaine" testimony as evidence simpliciter of Kocher's guilt. While it can be argued that the district court might well have chosen not to give the instruction, a course urged upon it by Kocher's counsel, "[a] district court has wide discretion in formulating appropriate jury instructions." *United States v. Walker*, 817 F.2d 461, 463 (8th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98

L.Ed.2d 134 (1987). We conclude that the district court did not abuse its discretion in submitting Instruction No. 16 to the jury.

■ Kocher contends that the district court erred by not granting his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

We have held that:

[a] motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as the existence of any of the essential elements of the crime charged. * * * "The evidence need not exclude every reasonable hypothesis except guilt; the essential elements of the crime may be proven by circumstantial, as well as direct evidence."

*United States v. Mundt*, 846 F.2d 1157, 1158 (8th Cir.1988) (quoting *United States v. Nabors*, 762 F.2d 642, 653 (8th Cir.1985)). We apply the same standard on appeal. *United States v. Bredell*, 884 F.2d 1081, 1082 (8th Cir.1989).

Having reviewed the record in the light most favorable to the government, we conclude that there was sufficient evidence to support the jury's verdict.

We have considered Kocher's remaining arguments and find that they are without merit.

The conviction and sentence are affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

My sad commentary on this case is that the trial judge should have told the jury that defendant's "toot" of cocaine on one occasion proved nothing relating to the issue of guilt or innocence. Instead, the judge gave the jury a peg to fasten guilt and a more than ten-year sentence on Kocher. Otherwise, the jury may well have hung as it did in the first trial on the

---

**2.** As a Rule 404(b) instruction, it contains a misstatement (although in Kocher's favor) of the quantum of proof necessary to establish the

existence of the prior bad act. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

government's thin case. Thus, I must dissent.

In my opinion, instruction 16 represents egregious error in this case, under all the circumstances. The instruction is internally inconsistent and permitted the jury to draw the completely illogical conclusion that, because the defendant may have "tooted" cocaine casually on one occasion, this alleged incident can be used to show defendant's intent to conspire to engage in the manufacture of amphetamines. The instruction permitted the jury to convict upon an illogical presumption and even to substitute this irrelevant evidence for the necessary proof of conspiracy, so as to justify a conviction.

I particularly note that the issue of guilt was thin and the subject of great dispute. Initially, the government charged Kocher with manufacturing and distributing amphetamines and conspiracy to manufacture and distribute amphetamines. At the first trial, a jury acquitted Kocher of the manufacturing and distribution charge, but could not agree as to the conspiracy charge. The government retried him on this latter count.

At trial, Kocher defended on the ground that he lacked intent; specifically, that he possessed no knowledge of the illicit drug activities, including the existence of the amphetamine laboratory. According to Kocher, he had merely rented an empty barn to a business associate and inquired no further. The defense contested the inferences of Kocher's knowledge arising from the government's evidence that Kocher's phone and closet smelled like a drug used in amphetamine manufacture and that a surveillance camera was installed in Kocher's chimney.

The following testimony served as the basis for instruction 16:

Direct Examination:

Q. So did you ever spend any time with the defendant other than just your initial introduction?

A. We might have—well, we did, we tooted coke one time out back of his daddy's fish house.

. . . .

Q. After that opportunity and the time you spent with the defendant, did you see him again?

A. Not beside the time that Darrel took me out there.

Tr. at 34–35.

Cross–Examination:

Q. Mr. Smith, you say that on one occasion that you were with Harold and that you tooted some cocaine?

A. Yes, Sir.

Q. Now, cocaine and amphetamines are totally two different animals, aren't they?

A. Yes, Sir.

Q. Now, whose cocaine was that?

A. It was mine.

Q. Okay. And was that offered to him as, what, as a social gesture?

A. Yes, Sir.

Q. Okay. And on that one occasion only?

A. Yes, Sir.

Id. at 46.

In objecting to the questioned instruction, Kocher's attorney asserted that the evidence of one incident of personal cocaine use could not support an inference of specific intent to conspire to manufacture and distribute amphetamines.

First, in examining the instruction, note the internal inconsistency in the second paragraph advising:

If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused did the act charged in the indictment, then the jury may consider evidence as to the alleged earlier cocaine use in determining the state of mind or intent with which the accused did the act charged in the indictment.

Jury Instruction No. 16.

Here, no act existed relating to the charge. Conspiracy represents an agreement—a state of mind disclosed by objective facts.[1] Thus, the act amounted to a

---

1. *United States v. Austin,* 823 F.2d 257, 258–59 (8th Cir.1987), *cert. denied,* 484 U.S. 1044, 108

state of mind and the district court's instruction not only served to confuse the issue, but advised the jury that it could consider the "tooting" of cocaine to show intent. To follow that illogic, then, it authorized the jury to find intent, even if the government did not otherwise show intent. No wonder that the government urged the instruction upon the district court.

But, more importantly, intent may not be premised upon an isolated fact, *United States v. Welch*, 728 F.2d 1113, 1119 (8th Cir.1984) (citing *Morissette v. United States*, 342 U.S. 246, 274–76, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952)). Instead, a finding of intent must be determined "on the basis of 'all the evidence considered together' in light of 'all the surrounding circumstances.'" *Id.*

A legion of cases supports,[2] and the majority concedes, that "[p]ermissive presumptions are constitutional so long as the inference to be drawn is not irrational." At 486 (citing *Francis v. Franklin*, 471 U.S. 307, 314–15, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985)). But the inference here is irrational and farfetched.

I cannot subscribe to the majority's argument that "their mutual use of cocaine tended to establish that Kocher and Smith had a relationship that involved controlled substances." At 486–87. Substance to that argument vanishes when one considers that:

1. Smith's statement that he gave Kocher cocaine at a social outing in no way related to any conspiracy involving Kocher.

2. The conversation in no way implicated White, with whom the government claimed Kocher conspired to manufacture amphetamines.

Kocher received no light sentence for his allegedly knowledgeable rental of a barn to White, but must serve more than ten years in prison. He has had two trials. In one, the jury acquitted on one count and could not agree on the conspiracy count. The government has zealously tried him again and, in my view, obtained a conviction on the sole issue of intent by pressing the trial judge to issue an erroneous and extremely prejudicial instruction. I would reverse the conviction.

S.Ct. 778, 98 L.Ed.2d 864 (1988); *United States v. Hoelscher*, 764 F.2d 491, 494 (8th Cir.1985); *United States v. Sopczak*, 742 F.2d 1119, 1121 (8th Cir.1984); *United States v. Michaels*, 726 F.2d 1307, 1310–11 (8th Cir.1984), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *United States v. Holder*, 560 F.2d 953, 957 (8th Cir.1977); and *United States v. Skillman*, 442 F.2d 542, 547 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

2. *Francis v. Franklin*, 471 U.S. 307, 314–15, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); *Ulster County Court v. Allen*, 442 U.S. 140, 157, 99 S.Ct.

2213, 2224, 60 L.Ed.2d 777 (1979); *Turner v. United States*, 396 U.S. 398, 419, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 *reh'g denied*, 397 U.S. 958, 90 S.Ct. 939, 25 L.Ed.2d 144 (1970); *Morissette v. United States*, 342 U.S. 246, 275–76, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952); *United States v. Rubio–Villareal*, 927 F.2d 1495, 1499–1501, *reh'g en banc granted*, 943 F.2d 1161 (9th Cir. 1991); and *United States v. Welch*, 728 F.2d 1113, 1119 (8th Cir.1984) (*quoting Morissette v. United States*, 342 U.S. 246, 275–76, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952)).