50 F.3d 1414
 41 Fed. R. Evid. Serv. 1228
 UNITED STATES of America, Appellee,
v.
Luis Arturo ESCOBAR, Appellant.
UNITED STATES of America, Appellee,
v.
Michael C. JOHNSON, Appellant.
UNITED STATES of America, Appellee,
v.
Alfonso SALGUEIRO-DUARTE, Appellant.
UNITED STATES of America, Appellee,
v.
Eddie KEEPER, Appellant.
 Nos. 94-1775, 94-1800, 94-1993, 94-2111.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1994.
Decided March 28, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied May
10, 1995 in Nos. 94-1800 and 94-2111.
 
 Henry Robertson, St. Louis, MO, argued, for appellant Escobar.
 Gerald Dunne, Clayton, MO, argued, for appellant Johnson.
 Rodolfo Rivera, St. Louis, MO, argued, for appellant Duarte.
 Gregory Fenlon, St. Louis, MO, argued, for appellant Keeper.
 Steven Holtshouser, St. Louis, MO, argued (Edward L. Dowd, Jr. and Steven E. Holtshouser, on the brief), for appellee.
 Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 After a jury trial, Luis Arturo Escobar, Alfonso Salgueiro-Duarte, Eddie Keeper and Michael Johnson were convicted of various conspiracy and drug-related charges. They raise numerous issues on appeal, including challenges to the sentences imposed by the district court.[1] After reviewing the record, we find no errors which justify reversal. We affirm.
 
 I. BACKGROUND
 
 2
 In late May 1993, St. Louis Police Department Detectives Anthony Lachenicht and Joseph Spiess received a tip from a confidential informant that Eddie Keeper was selling heroin. This informant told the officers that Keeper stored and sold his heroin out of an apartment located at 3219 Russell and he met his supplier at an apartment located at 1003 Cole. Both addresses are in St. Louis. Based on this information, these detectives began surveillance activities on Keeper which lasted from May 25, 1993, through June 1993.
 
 
 3
 Coincidentally, on June 4, 1993, another reliable confidential informant contacted Detectives Timothy Lachenicht (Anthony's brother) and Gregory Chromoga of the St. Louis Police Department Narcotics Unit. That day, these detectives and Detectives Anthony Lachenicht and Spiess all met with this informant. This informant told the officers that Keeper used 3219 Russell, Apartment 9 and 1003B Cole to store and sell large quantities of heroin. The officers then set up surveillance of both locations.
 
 
 4
 Based on the June 4 information from the informant and through their surveillance activities, the police obtained local search warrants for 3219 Russell, Apartment 9 and 1003B Cole. On July 15, 1993, after obtaining the search warrants, the police reestablished surveillance. They observed Keeper, Michael Johnson and Lance Allen arrive at 3219 Russell in Keeper's vehicle, enter Apartment 9, and leave shortly thereafter in Keeper's vehicle. Uniformed officers were then contacted to stop Keeper's vehicle and arrest the occupants.
 
 
 5
 The uniformed officers stopped Keeper's vehicle on Grand Avenue. The officers had the three occupants exit the vehicle and performed a pat down search for weapons on each individual. Detectives then arrived on the scene, placed the three suspects under arrest, and performed searches incident to arrest. These searches revealed heroin in the pocket of Allen and heroin in the underwear of Keeper and Johnson. Keeper's vehicle was secured by one of the detectives. At the police station, suspect Johnson directed officers to search his hat, claiming that evidence had been placed there by police officers. Officers found .415 grams of 32% pure heroin. An inventory search of Keeper's vehicle revealed 12.1 grams of 28% pure heroin underneath the driver's seat, several documents in Keeper's name, a mobile telephone and a beeper.
 
 
 6
 The police then proceeded to search 3219 Russell, Apartment 9 under the local search warrant. This search revealed two frying pans with knives stuck in them and a pot, all containing residue of black tar heroin; scales and a knife with heroin residue on it on top of a kitchen cabinet; coffee grinders used to cut heroin; 55.5 grams of 30% pure black tar heroin beneath a bathroom trash can liner; documents in the name of Tyrone Smith; and three of Keeper's parking tickets and a payment receipt in Keeper's name for his vehicle. Keeper's fingerprint was found in the heroin residue on the knife and on the bottom of one of the frying pans.
 
 
 7
 After the search at the Russell location was completed, several officers proceeded to 1003B Cole to execute that local search warrant. Upon entry, they observed Alfonso Salgueiro-Duarte and Gregory Coleman. Coleman was talking on the telephone during the police's entry and subsequently left the receiver off the hook. When the police entered 1003B Cole, Duarte made a move towards a couch when ordered to lie down. The police recovered a 9mm semiautomatic gun under one of the couch cushions. The officers asked Coleman and Duarte where the drugs were located. Coleman responded that there were no drugs at 1003B Cole, but at 909A Cole the officers would find heroin and two Hispanic males who owned the heroin. Coleman further explained that he was speaking on the telephone to one of the Hispanic males when the police first entered 1003B Cole, announcing their presence as police and that they had a search warrant. The officers confirmed that the telephone had been left off its receiver the entire time they were in the apartment. Two Western Union wire transfer receipts were the only evidence recovered at this location.
 
 
 8
 Based on the information provided by Coleman, and fearing that the occupants of 909A Cole were alerted to the police presence at 1003B Cole, several officers immediately proceeded down the block to 909A Cole. While the police were attempting to enter the common door to 909 Cole, they observed three people proceeding up the stairs from 909A Cole: Garland Spivey, Leona Browder and Antoinette Holbrook, an eleven-year-old child, who was carrying a suitcase. They also observed two Hispanic males: one in the doorway of 909A Cole and one immediately outside the doorway. The male immediately outside the doorway (later identified as Escobar) saw the police officers first. He immediately turned to reenter 909A Cole and collided with the male (later identified as Vizcarra) attempting to exit 909A. At that time, Vizcarra also noticed the police attempting to gain entry into 909 Cole. Both men reentered 909A and shut the door behind them. After the police gained entry to 909 Cole, they stopped Spivey, Browder and Holbrook. Holbrook informed the officers that one of the men had placed money in her suitcase and she gave the officers a key to 909A. At a later time, Holbrook's suitcase was searched pursuant to a federal warrant and $25,000 in U.S. currency was found. Escobar's fingerprint was found on one of the money bands.
 
 
 9
 Fearing that the occupants of 909A may have been destroying evidence, the officers entered the apartment. Escobar and Vizcarra were found in the master bedroom. The police secured both individuals. 378.7 grams of 70% pure heroin were found on Vizcarra. Several papers, including some with Keeper's home telephone number, were found on Escobar. Vizcarra and Escobar were arrested and the apartment was secured while a federal search warrant was obtained. During the execution of that search warrant, a 9mm semiautomatic pistol and duct tape were discovered.
 
 
 10
 A seven-count indictment was returned against Escobar, Vizcarra, Duarte, Keeper, Johnson and Allen.[2] Escobar, Vizcarra, Duarte, Keeper, Johnson and Allen were charged with conspiracy to distribute and possession with intent to distribute heroin. Keeper, Johnson and Allen were each charged with possession with intent to distribute heroin. Escobar, Vizcarra and Duarte were charged with possession with intent to distribute 100 grams or more of heroin. Duarte, Escobar and Vizcarra were each charged with using and carrying a firearm in relation with drug trafficking. Escobar, Duarte, Keeper and Johnson proceeded to jury trial. Vizcarra entered into a plea bargain with the government and testified against Keeper, Johnson, Duarte and Escobar at trial. After a two and one-half week jury trial, Keeper, Johnson, Duarte and Escobar were convicted on all counts. Escobar was sentenced to 322 months in prison, Keeper to 240 months in prison, Duarte to 78 months in prison, and Johnson was originally sentenced to 78 months in prison, which was later reduced to 21 months. Further details will be developed as we treat those specific issues.
 
 II. DISCUSSION
 
 11
 On appeal, the defendants collectively raise thirteen issues, only six of which merit extended discussion: (1) Keeper, Johnson and Duarte raise sufficiency of the evidence challenges; (2) Keeper challenges admission of other crimes evidence; (3) Duarte and Escobar challenge admission of a false exculpatory statement against Keeper as violating Bruton; (4) Escobar challenges admission of certain coconspirators' statements; (5) Duarte challenges the admission of certain evidence used to impeach him; and (6) Keeper and Escobar raise sentencing issues. The remaining issues are without merit and we decline to consider them.
 
 A. Sufficiency of the Evidence
 
 12
 When a defendant argues that the evidence presented at trial was insufficient to sustain his conviction, we review the evidence in the light most favorable to the jury's verdict, accepting as established all reasonable inferences tending to support that verdict. United States v. Agofsky, 20 F.3d 866, 869 (8th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). We will reverse only if "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Frayer, 9 F.3d 1367, 1371 (8th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994).
 
 
 13
 1. Keeper's and Johnson's Conspiracy Convictions
 
 
 14
 Keeper and Johnson argue that insufficient evidence exists to support their conspiracy convictions. To support a conviction for a conspiracy under 21 U.S.C. Sec. 846, the government must show an agreement between at least two people and that the agreement's objective was a violation of the law. United States v. Maejia, 928 F.2d 810, 813 (8th Cir.1991). The government need not prove an overt act in furtherance of the conspiracy. Id. The evidence showing the conspiracy may be either direct or circumstantial; often proof of the agreement must be implied from the surrounding circumstances. Id.
 
 
 15
 a. Keeper
 
 
 16
 The government introduced ample evidence establishing Keeper entered into a conspiracy to distribute heroin. We need not recite all the evidence against him. Vizcarra testified that in May 1993, he and Escobar brought eight ounces of heroin from California to St. Louis. Vizcarra testified that Escobar gave Keeper seven ounces of that heroin on credit. Vizcarra testified that Escobar expected payment for the heroin after Keeper resold it. Vizcarra testified that he, Escobar and Duarte again traveled to St. Louis with thirty ounces of heroin in July 1993. Escobar gave Keeper four ounces of this heroin on credit for distribution, prior to his arrest on July 15, 1993. Spivey testified that on one occasion he saw Keeper and Escobar at Coleman's apartment, 1003B Cole, and that Keeper was watching Escobar count approximately ten stacks of money. It is the jury's duty, not ours, to evaluate the credibility of these witnesses and weigh their testimony. United States v. Zerba, 21 F.3d 250, 252 (8th Cir.1994).
 
 
 17
 Documents bearing Keeper's home telephone number were recovered from both Escobar and Duarte. In addition to the heroin found on Keeper's person and in his vehicle at the time of his arrest, Keeper's fingerprints were also found in heroin residue found on a knife and in a frying pan during the search of 3219 Russell, Apartment 9. We are convinced that the evidence provides a sufficient basis for the jury's verdict that Keeper participated in the charged conspiracy to distribute heroin.
 
 
 18
 b. Johnson
 
 
 19
 Once the existence of a conspiracy is established, only slight evidence is required to link Johnson to the conspiracy. Agofsky, 20 F.3d at 870. The government met this burden with respect to Johnson.
 
 
 20
 At trial, the government introduced evidence that during its surveillance activities, Johnson was observed with Keeper on three separate occasions. On July 15, 1993, Johnson was observed entering 3219 Russell, Apartment 9, and left with Keeper and Allen a short time later. Johnson was arrested immediately after leaving 3219 Russell, Apartment 9. During a search incident to arrest, 2.686 grams of 31% pure heroin were recovered from Johnson's person; at the station house, Johnson directed officers to .415 grams of 32% pure heroin in his hat that he claimed was planted by police officers. Testimony at trial revealed that possession of this amount and purity of heroin is indicative of distribution activities.
 
 
 21
 At the time of Johnson's arrest, Keeper and Allen accompanied him. They had just left 3219 Russell, Apartment 9, an apartment used to store heroin. Heroin was also recovered from Keeper, Allen and the vehicle that Keeper, Allen and Johnson were riding in. The quantity and purity of this heroin denoted possession for distribution purposes. Although, with respect to contraband, a mere sales agreement is not sufficient to support a conviction for conspiracy, "evidence that drugs were purchased for resale [is] sufficient to support a conviction of conspiracy." United States v. West, 15 F.3d 119, 121 (8th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 177, 130 L.Ed.2d 112 (1994). The evidence, when viewed in the light most favorable to the government, supports the conclusion that heroin seized from Johnson was obtained at 3219 Russell, Apartment 9, and held for resale, not for personal use. Accordingly, it is sufficient to support Johnson's conspiracy conviction. From the evidence presented, the jury was entitled to infer the existence of an agreement to distribute cocaine and they were entitled to infer that Johnson received his heroin from Keeper who, in turn, received his supply from Escobar.
 
 
 22
 2. Duarte's Possession with Intent to Distribute Conviction
 
 
 23
 Duarte argues that the district court erred in refusing to grant his motion for acquittal on Count V, possession of 100 grams or more of heroin with intent to distribute on or about July 15, 1993. Duarte argues that the evidence presented at trial was insufficient to support the jury's verdict because he did not actually or constructively possess the heroin on the date charged in the indictment. We disagree.
 
 
 24
 We review the denial of a motion for acquittal under the same standard as insufficiency of the evidence. All of the evidence must be viewed in the light most favorable to the government, giving it the benefit of all reasonable inferences. United States v. Pace, 922 F.2d 451, 452 (8th Cir.1990). Our review of the evidence is limited to determining whether the district court correctly answered the threshold question: Was evidence sufficient to support a guilty verdict produced at trial, so that the jury should be called upon to weigh the evidence and reach a verdict? Id.
 
 
 25
 The government requested and the jury was instructed that Duarte could be held vicariously liable pursuant to Pinkerton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). It is well settled that:
 
 
 26
 [u]nder Pinkerton, each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act.
 
 
 27
 United States v. Lucas, 932 F.2d 1210, 1220 (8th Cir.) (internal quotations and citations omitted), cert. denied, 502 U.S. 929, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991). No evidence was presented at trial that Duarte ever attempted to affirmatively withdraw from the conspiracy; accordingly, he was still a member of the conspiracy. Possession with intent to distribute heroin is obviously a substantive crime committed in the course of and in furtherance of a conspiracy to distribute heroin. Thus, the remaining question under Pinkerton is whether any member of the conspiracy possessed heroin with the intent to distribute it on the date of the indictment; whether Duarte actually or constructively possessed the heroin on the date charged in the indictment becomes irrelevant. At trial, overwhelming evidence was presented that Escobar and Vizcarra actually possessed over 300 grams of heroin with the intent to distribute it on July 15, 1993, the date charged in the indictment. Because Escobar and Vizcarra were Duarte's coconspirators, this is sufficient evidence to sustain Duarte's conviction for possession with intent to distribute heroin. Accordingly, the district court properly refused to grant Duarte's motion for acquittal.
 
 B. Other Crimes Evidence
 
 28
 Keeper argues that the district court erred by admitting evidence of a search of his residence in Universal City, Missouri on December 3, 1990. The only people present during this search were Keeper's wife and child. This search revealed 26 grams of cocaine, $12,037 in U.S. currency, and four firearms: an Uzi; a .25 automatic; a .357; and a .25 (but no ammunition). Keeper argues that this evidence is inadmissible character evidence. The government argues that it is other act evidence relevant to show Keeper's knowledge and intent to distribute heroin.
 
 
 29
 The trial court has broad discretion when determining admissibility of other crimes evidence. United States v. Dobynes, 905 F.2d 1192, 1195 (8th Cir.), cert. denied, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). We will not reverse its decision to admit such evidence "unless it is clear that the evidence had no bearing upon any of the issues involved." Id. (internal quotations and citation omitted).
 
 
 30
 Evidence of bad acts or other crimes is admissible under Federal Rule of Evidence 404(b) to show, among other things, the defendant's knowledge or intent. United States v. Wint, 974 F.2d 961, 966 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993). This evidence is admissible under Rule 404(b) provided it is "(1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crime; and (4) more probative than prejudicial." Dobynes, 905 F.2d at 1195. Rule 404(b) is an inclusionary rule: other crimes evidence is admissible unless it is only offered to show the defendant's criminal propensities. Id.
 
 
 31
 Applying the standards set forth above, we find that the district court did not abuse its discretion by admitting evidence of the December 3, 1990 search of Keeper's residence. First, this evidence is relevant because "testimony of prior drug transactions is admissible to prove that a defendant acted knowingly and intentionally." Wint, 974 F.2d at 967; see also United States v. Pierce, 792 F.2d 740, 743 (8th Cir.1986). Second, as both the prior evidence and the charged conduct involved possession of drugs with the intention to distribute, we believe the crimes are similar in kind. We reject Keeper's argument that the 1990 search was too remote from the charged conduct. We have previously held that "evidence of an offense committed within the previous five years is reasonably close in time." Wint, 974 F.2d at 967. With respect to the third prong, the combination of cocaine, money and guns seized at Keeper's residence in 1990 is sufficient to support a finding that Keeper possessed the cocaine with the intent to distribute it. We reject Keeper's argument that the cocaine is not attributable to him because he was not present at the time it was seized.
 
 
 32
 Finally, balancing the probative value of the 1990 search against any prejudicial impact it may have rests primarily within the discretion of the district court. United States v. O'Connell, 841 F.2d 1408, 1423 (8th Cir.1988) (citations omitted), cert. denied, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). The district court gave the jury a cautionary instruction, informing it of the limited purpose for which it could consider the evidence of the 1990 search. This instruction minimized the likelihood that Keeper was prejudiced by the introduction of this evidence. See, e.g., United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir.1992). Therefore, we cannot say that the district court abused its discretion by admitting this evidence.
 
 
 33
 We also reject Keeper's argument that the government should only have been allowed to introduce this evidence, if at all, in rebuttal because Keeper had not yet placed his knowledge or intent in issue. By entering a plea of not guilty to the charged offenses, Keeper placed every element of every crime charged in issue. United States v. Aranda, 963 F.2d 211, 215 (8th Cir.1992). "Moreover, '[i]t [is] not necessary for the government to await defendant's denial of intent or knowledge before introducing this evidence; instead, the government may anticipate the defense and introduce it in its case-in-chief.' " Id. (citation omitted).
 
 C. False Exculpatory Statement
 
 34
 Duarte and Escobar challenge the district court's admission of a false exculpatory statement made by Keeper at his initial appearance before the magistrate judge. At this appearance, when asked if he understood the charges against him, Keeper replied, "I don't even know three of these," pointing at Escobar, Duarte and Vizcarra. This evidence was admitted at trial against Keeper as a false exculpatory statement. The district court instructed the jury that they could only consider this evidence against Keeper.
 
 
 35
 Duarte and Escobar attempt to argue that this statement was made in violation of Keeper's Miranda rights. However, Keeper's Miranda rights are personal to him, and Duarte and Escobar have no standing to assert this alleged violation. Bellis v. United States, 417 U.S. 85, 89-90, 94 S.Ct. 2179, 2183-84, 40 L.Ed.2d 678 (1974); United States v. Fortna, 796 F.2d 724, 732 (5th Cir.), cert. denied, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). Duarte and Escobar also allege that use of this statement violated their Confrontation Clause rights under Bruton.[3] The government argues that Escobar and Duarte did not preserve this issue for appellate review because their objections at trial centered on the government's failure to provide timely discovery of this evidence. We need not belabor this point, however, because, assuming timely objection, the district court acted within its discretion in admitting this evidence.
 
 
 36
 It is well established that "the admission in a joint trial of a nontestifying co-defendant's confession expressly implicating the defendant violate[s] the defendant's right under the Sixth Amendment to confront the witnesses against him, even if the trial court instructed the jury to consider the confession only against the co-defendant that had made the statement." United States v. Miller, 995 F.2d 865, 867 (8th Cir.) (citing Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968)), cert. denied, --- U.S. ----, 114 S.Ct. 618, 126 L.Ed.2d 583 (1993). Bruton is not applicable because the evidence that Escobar and Duarte object to is not inculpatory. Keeper's statement was used only to show that he was acquainted with Escobar and Duarte and he lied about this fact; this statement by itself does not implicate Escobar or Duarte in any wrongdoing.
 
 
 37
 Furthermore, even assuming that admission of this evidence violated Bruton, any resulting error was harmless. See United States v. Jones, 965 F.2d 1507, 1515 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). Abundant evidence was produced at trial showing Keeper's acquaintance with Escobar and Duarte: papers with Keeper's home telephone number were found on both Escobar and Duarte; Spivey and Coleman testified that Escobar and Keeper were together at Coleman's apartment on at least one occasion; and Vizcarra testified extensively to the operations of the conspiracy and the relationship between Escobar, Duarte and Keeper.
 
 D. Coconspirators' Statements
 
 38
 Escobar challenges the admission of certain out-of-court statements made by Tommy Mitchell and John Robinson[4] that were introduced through the testimony of Diane Holbrook and Greg Coleman.[5] Holbrook testified that Robinson told her that he and Mitchell were in the drug business. Trial Tr. at 284. Coleman testified that Mitchell stated that his relationship with Escobar "was drugs." Id. at 399. The district court determined that these statements were admissible under the coconspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E).
 
 
 39
 Rule 801(d)(2)(E) provides that "[a] statement is not hearsay if made 'by a co-conspirator of a party during the course and in furtherance of the conspiracy.' " United States v. Kocher, 948 F.2d 483, 485 (8th Cir.1991) (citing Fed.R.Evid. 801(d)(2)(E)). To admit a statement under this rule, the government must establish by a preponderance of the evidence that "(1) a conspiracy existed; (2) that the defendant and declarant were part of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." Id. (internal quotations and citations omitted). We review a district court's decision that these requirements have been met for clear error. Id.
 
 
 40
 Escobar only argues that these statements were not made in furtherance of the conspiracy. The "in furtherance" requirement of Rule 801(d)(2)(E) is construed broadly. United States v. Leisure, 844 F.2d 1347, 1361 (8th Cir.), cert. denied, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988). It is well established that statements of one conspirator identifying another are made "in furtherance of the conspiracy." United States v. Garcia, 893 F.2d 188, 190 (8th Cir.1990). Accordingly, Robinson's statement that he and Mitchell were in the drug business is admissible under the coconspirator exception. Additionally, "statements which reveal the existence and progress of a conspiracy are also in furtherance of the conspiracy." United States v. Kocher, 948 F.2d at 485. Mitchell's statement that his relationship to Escobar "was drugs" is "in furtherance" of the conspiracy because it reveals the existence of a conspiracy and identifies a coconspirator.[6]
 
 E. Impeachment Evidence
 
 41
 Duarte argues that the district court erred by allowing the government to elicit information on cross-examination that his brother was in prison in Minnesota. Duarte and Vizcarra testified that Duarte's motive for traveling to St. Louis was to continue on to Minnesota to visit Duarte's brother. On cross-examination, the district court allowed the government to cast doubt on this testimony by eliciting from these witnesses that Duarte's brother was in federal prison in Minnesota and that they could not, at that time, visit him because neither Duarte nor Vizcarra were on Duarte's brother's approved visitor list. Trial Tr. at 1260-61. We review the district court's decision to admit this evidence under the abuse of discretion standard. United States v. Fuller, 887 F.2d 144, 147 (8th Cir.1989), cert. denied, 496 U.S. 908, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). We believe the district court properly admitted this evidence under Federal Rule of Evidence 611(b). Rule 611(b) provides that cross-examination is "limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Duarte opened the door with his cross-examination of Vizcarra and his own direct testimony. Vizcarra and Duarte testified that their motive for traveling to St. Louis was to continue on to Minnesota to visit Duarte's brother. That they could not visit Duarte's brother is relevant to the credibility of both Vizcarra's and Duarte's testimony concerning this motive. Accordingly, this evidence was admissible to impeach Vizcarra's and Duarte's testimony by contradiction. See Underwood v. Colonial Penn Ins. Co., 888 F.2d 588, 590-91 (8th Cir.1989) (evidence that Underwood refused to take a polygraph test admissible to impeach his testimony that he told sheriff he would cooperate and had no reason not to cooperate with investigation). We reject Duarte's argument that this evidence was intended to show Duarte's guilt by association with guilty parties; rather, we believe the evidence was offered by the government to rebut Duarte's offered motive for traveling to St. Louis.
 
 
 42
 Duarte also objects to a line of questioning concerning the number of dependents he claimed on his tax returns. The government argues that these questions were permissible to impeach Duarte's credibility because they showed that he lied on his tax returns. In United States v. Dennis, 625 F.2d 782, 798 (8th Cir.1980), we stated that "civil tax problems cannot be regarded as indicating a lack of truthfulness under" Federal Rule of Evidence 608(b) and, accordingly, may not be inquired into on cross-examination to impeach a witness's credibility.[7] Assuming that the district court erred by allowing this line of cross-examination, we believe that any resulting error was harmless. Abundant evidence was produced at trial against Duarte: Vizcarra testified that Duarte was hired by Escobar to transport heroin from California to St. Louis; Duarte testified that he traveled to St. Louis with Escobar and Vizcarra; when Duarte was arrested, he made a move towards a couch that had a loaded gun under one of the cushions; at the time of his arrest, he had Keeper's phone number in his wallet.
 
 F. Sentencing Issues
 1. Keeper
 
 43
 Keeper argues that the district court erred in assessing a base offense level (BOL) of 32 under the Sentencing Guidelines because the court did not make any findings that the drug quantities attributed to him were foreseeable. The Presentence Investigation Report (PSR) attributed 1064 grams of heroin to Keeper, which results in a base level offense of 32 under U.S.S.G. Sec. 2D1.1(c)(4). The district court adopted the findings of the PSR, overruling Keeper's objections that only the quantities he possessed should be attributable to him, and assessed an initial BOL of 32. The district court's determination of heroin quantities for sentencing purposes is a factual determination reviewable under the clearly erroneous standard. United States v. Olderbak, 961 F.2d 756, 763 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992). We will reverse the district court only if "we are left with a firm and definite conviction that a mistake has been made." United States v. McMurray, 34 F.3d 1405, 1415 (8th Cir.1994).
 
 
 44
 In determining Keeper's BOL, he is "accountable for drug quantities implicated in the conspiracy that are reasonably foreseeable to [him]." United States v. Montanye, 996 F.2d 190, 192 (8th Cir.1993) (citing U.S.S.G. Sec. 1B1.3(a)(1)(B)). Because Keeper objected to the quantity of drugs attributed to him in the PSR, the district court was required to make a foreseeability finding about the amount of drugs attributable to Keeper. Id. Based upon our review of the sentencing transcript, we agree with the district court that the entire 1064 grams of heroin were foreseeable to Keeper. The amount of 1064 grams of heroin was based on the testimony of Vizcarra that he and Escobar transported heroin to St. Louis on two occasions. On the first trip, they transported eight ounces (224 grams), and on the second trip, they transported 30 ounces (840 grams) of heroin. Accordingly, the total amount of heroin involved in this conspiracy was 1064 grams of heroin.
 
 
 45
 We will briefly summarize the evidence the district court relied upon at sentencing to determine that the entire amount of heroin involved in the conspiracy was reasonably foreseeable to Keeper. During surveillance activities, on several occasions police officers observed Keeper travel to 3219 Russell, Apartment 9 or 1003B Cole, enter the apartment for a short time and then travel to areas known for high drug sales. Immediately before his arrest, Keeper left 3219 Russell, Apartment 9. A subsequent search of this apartment uncovered 124.2 grams of heroin. At the time of Keeper's arrest, 24.463 grams of heroin were recovered from him, his vehicle, Johnson and Allen. An additional 378.7 grams of heroin were recovered from Vizcarra at 909A Cole. Testimony at trial indicated that Escobar provided eleven ounces of heroin to Keeper for distribution. Trial testimony also indicated that Keeper brought bags of money to Escobar, and received heroin from him, at the Cole Street apartment. The court found that Keeper received "a significant portion of the total amount of heroin that was brought to St. Louis by Mr. Escobar, Mr. Vizcarra and Mr. Duarte and that [it] was provided to him for purposes of further distribution." Keeper Sent.Tr. at 22. The court also found that "there was evidence that establishes that Mr. Keeper was aware of the scale of operation that was being conducted out of the Cole Street apartment, in light of the evidence of the amount of drugs that he obtained from Mr. Escobar during this time period." Id. at 26. Accordingly, we do not believe the district court erred in attributing the entire 1064 grams of heroin to Keeper and disagree with Keeper that the district court did not make sufficient foreseeability findings with respect to this quantity.
 
 
 46
 Keeper also argues that the district court erred in assessing a three level upward adjustment, determining that he was a manager or supervisor under U.S.S.G. Sec. 3B1.1(b). Section 3B1.1(b) provides for a three level BOL increase if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants."
 
 
 47
 Factors the district court should consider in making a determination under Sec. 3B1.1 include "the nature of defendant's role in the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense." United States v. Ortiz-Martinez, 1 F.3d 662, 677 (8th Cir.) (citing U.S.S.G. Sec. 3B1.1, comment. (n.3)), cert. denied, --- U.S. ----, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993). Furthermore, "we have noted that an individual can occupy a leadership role without having directly controlled his co-conspirators." Id. (citing United States v. Grady, 972 F.2d 889, 889 (8th Cir.1992)).
 
 
 48
 The district court's decision to increase Keeper's offense level was not clearly erroneous. The district court determined that the adjustment was appropriate because the evidence at trial established that the heroin possessed by Johnson and Allen was obtained either from Keeper directly or Apartment 9 at 3219 Russell. Sent.Tr. at 23. Testimony at trial also established that Keeper utilized the services of a man known only as "Country" to physically transport the drugs Keeper received from Escobar at the Cole Street apartment. The district court also overruled objections to the PSR, determining that the evidence produced at trial supported its conclusion that Keeper established a wholesale distribution network in St. Louis.
 
 
 49
 We reject Keeper's assertion that he was entitled to an evidentiary hearing on both of these sentencing issues. It is well established that the district court is entitled to rely on evidence presented at Keeper's trial when sentencing him. United States v. Roberts, 953 F.2d 351, 354 (8th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3008, 120 L.Ed.2d 882 (1992).
 
 2. Escobar
 
 50
 Escobar argues that the district court erred in adjusting his BOL upward two levels for willful obstruction of justice under U.S.S.G. Sec. 3C1.1. The district court based this enhancement on its finding that Escobar threatened Vizcarra into refusing to testify. See U.S.S.G. Sec. 3C1.1, comment. (n. 3(a)). We review this determination for clear error only. United States v. Capps, 952 F.2d 1026, 1027 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2978, 119 L.Ed.2d 596 (1992). Escobar argues this increase was improper because no evidence was presented that established his specific intent to threaten Vizcarra.
 
 
 51
 We do not believe the district court clearly erred in its determination that Escobar threatened Vizcarra in an attempt to get him to refuse to testify at trial. The district court found credible Vizcarra's testimony that Escobar threatened Vizcarra and his family if Vizcarra testified and that Escobar made Vizcarra write a letter that retracted his prior statements to the police, claiming those statements were a result of police coercion. Accordingly, a two level upward adjustment was appropriate. See United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir.1993); Capps, 952 F.2d at 1026.
 
 III. CONCLUSION
 
 52
 For the foregoing reasons, we affirm the district court.
 
 
 
 *
 THE HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Allen was granted a severance and subsequently pleaded guilty to the charges against him
 
 
 [3]
 Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)
 
 
 [4]
 The government used these statements of Mitchell and Robinson, along with other evidence, to show how the conspiracy was initially formed. Basically, the evidence at trial showed Keeper originally purchased drugs from Mitchell and Robinson and he met Escobar through Mitchell. When Mitchell and Escobar had a falling out, Keeper quit dealing with Mitchell and continued purchasing drugs from Escobar
 
 
 [5]
 These witnesses were not involved in the conspiracy. Holbrook was Escobar's girlfriend; Coleman lived at 1003B Cole
 
 
 [6]
 Even if these statements were not admissible under the coconspirator exception to the hearsay rule, given the overwhelming evidence presented against Escobar, any resulting error was harmless
 
 
 [7]
 Although Dennis was cited by Duarte in his brief, the government failed to address Dennis at all. It would have been helpful in our analysis of this issue for the government to address Dennis in its brief, as it seems to be directly on point