**United States Court of Appeals**

FOR THE EIGHTH CIRCUIT

_____

No. 97-1672

_____

United States of America,          *
                                    *
          Plaintiff-Appellee,       *   Appeal from the United States
                                    *   District Court for the
     v.                             *   Western District of Missouri.
                                    *
Ernest Ray Eads,                    *
                                    *
          Defendant-Appellant.      *
                                    *


_____

Submitted: April 14, 1998
Filed: May 22, 1998

_____

Before BOWMAN, Chief Judge,[1] McMILLIAN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

     Ernest Eads fled from the Western District of Missouri while the jury was deliberating on drug charges against him and was later apprehended in Oklahoma where he was charged with being a felon in possession of a firearm.  The firearm case

_____

     [1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

was transferred to Missouri where he was granted a new trial in the drug case.[2]  New counsel was appointed, and a plea agreement was negotiated. Eads then pled guilty to conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 846, and felon in possession of a firearm, 18 U.S.C. § 922. He subsequently tried to withdraw his plea, but the district court[3] denied the motion and sentenced him to life on the conspiracy conviction and twelve months consecutive on the firearm conviction.  Eads appeals, and we affirm.

Law enforcement officials developed evidence against Eads after intercepting three packages with the same return address.  An anonymous tip had indicated the shipments would be cocaine, but the packages proved to contain methamphetamine. They were resealed, and controlled deliveries were arranged.  Arlene Rainwater indicated that the package addressed to her was for Eads, and she agreed to cooperate and called Eads to tell him it had arrived.  Eads was arrested after he picked it up.  Only one of the other two packages was successfully delivered; it led to the arrest of Bobby Joe Green.  The two packages contained a total of 735.7 grams of prepared methamphetamine, which amounted to 158.318 grams of pure methamphetamine.

Eads gave a statement to law enforcement officials in which he said that Green had approached him about purchasing methamphetamine which would be obtained from an Arizona supplier.  Green told Eads that he and Tory Tygart had previously transported methamphetamine taped to their bodies but that they would have it shipped this time after he and Tygart arranged the purchase in Phoenix.  Eads told the officers that each man was to have a package shipped to him in a different Missouri town and

---

[2]Eads had been found guilty of the drug charges by the jury, but while he was a fugitive it was learned that his trial counsel had been involved in the drug activities and had subsequently surrendered his license.

[3]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

that he had agreed to purchase a quarter pound of uncut methamphetamine and had paid Green $3,800 in advance. Green also made a statement to law enforcement officials in which he said that he had been buying methamphetamine from Eads since October 1994 and that Eads' financial contribution was necessary for the conspirators to make bulk purchases of the drug.

When Eads reappeared in the Western District of Missouri, a plea agreement was worked out. The government agreed to dismiss a pending charge of attempt to possess with intent to distribute methamphetamine and to eliminate sentencing consideration of a prior conviction for conspiracy to possess with intent to distribute methamphetamine, and Eads pled guilty to the methamphetamine conspiracy and firearm charges. The district court calculated a base offense level of 32 for the conspiracy, finding this conduct involved between 100 and 300 grams of actual methamphetamine. A two level adjustment was imposed for obstruction of justice and three levels were added because of a finding that he was a career offender under U.S.S.G. § 4B1.1 because of two prior felony drug convictions. This gave him a total offense level of 37 with a criminal history score in category VI based on three drinking related driving convictions and three earlier drug violations. His base offense level of 24 on the firearm charge was adjusted to 25 because the charge involved three firearms. The district court sentenced Eads on the conspiracy conviction at the top of the guideline range of 360 months to life and to a consecutive twelve month term on the firearm conviction.[4]

Eads argues that the district court erred in denying his motion to withdraw his guilty plea because he had not understood that he faced a potential life sentence. Eads told the court at his sentencing hearing, however, that prior to entering his plea counsel had informed him that his sentence could range from twenty years to life, and his plea agreement stated that he could be imprisoned for not less than twenty years and up to

---

[4] The guideline range for this conviction was 110 to 137 months.

life.  The court also advised him of this range and maximum during the  plea hearing.  The record shows that Eads was advised of the potential maximum. He has failed to demonstrate a just reason to permit withdrawal of his plea, Fed. R. Crim. P. 32(e), and the district court did not abuse its discretion in denying the motion.  U.S. v. Capito, 992 F.2d 218, 220 (8th Cir. 1993).

Eads objects that his sentence was improperly calculated upon the full amount of methamphetamine that was shipped in the conspiracy.  In his plea agreement, Eads accepted without objection this quantity as the  basis for calculating his sentence, however, and he cannot successfully object for the first time on appeal.  U.S. v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994). Moreover, Eads admitted that he received more than 33 grams of pure methamphetamine for resale and that he was aware Green and Tygart would receive comparable shipments for the same purpose.  His demonstrated knowledge of the nature and scope of the conspiracy permitted a sentence based on the total amount of drugs.  U.S. v. Escobar, 50 F.3d 1414, 1424-25 (8th Cir. 1995).

Another sentencing objection raised on appeal is that the district court erred by denying Eads a reduction for acceptance of responsibility. He did not object to the presentence report recommendation against an acceptance of responsibility reduction, however, and we therefore review only for plain error.  Karam, 37 F.3d at 1280.  While Eads initially confessed his involvement in the conspiracy, he later fought to suppress the confession and fled from custody during jury deliberations, remaining at large for almost six months and committing another felony during that time. After again admitting his involvement at the plea hearing upon returning to Missouri, Eads attempted to minimize his role.  The court did not plainly err in rejecting an acceptance of responsibility reduction on this record.

Eads contends that the imposition of a life sentence was improperly based on a prior offense to which he had pled guilty with inadequate counsel and that it was a gross miscarriage of justice because it was disproportionate to the sentences of his co-

conspirators. He contends his earlier guilty plea to conspiracy to possess methamphetamine with intent to distribute should not be used to make him a career offender because his lawyer at the time later became involved in criminal activity with Eads and surrendered his license. This plea was entered over five years before the lawyer's fall from grace, and Eads has not shown he was disqualified at the time or that he did not provide competent representation. Eads' sentence is not invalidated merely because it was greater than those of his co-conspirators, U.S. v. Polanco, 53 F.3d 893, 897 (8th Cir. 1995), and it properly reflected his status as a career offender who must be sentenced at or near the upper limit of the applicable sentencing guideline range. U.S. v. LaBonte, 117 S.Ct. 1673, 1677 (1997). We see no error in the sentence.

Lastly, Eads argues that remand is required because the district court did not properly state the reasons supporting his sentence. During the sentencing hearing the district court noted on the record that the offenses were of a serious nature, that Eads had fled during his initial trial, had been unduly argumentative and disrespectful, and had at least two prior drug offense convictions. These findings provided an adequate statement of reasons for the sentence imposed. 18 U.S.C. § 3553(c)(1); U.S. v. Dumorney, 949 F.2d 997, 997-98 (8th Cir. 1991).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.